# Edinboro Normal School *v.* Cooper, Appellant.

[Marked to be reported.]

*Equity—Duty of Chancellor to consider consequences.*

It is often the duty of a chancellor to consider the consequences of a decree he is asked to make, and to withhold it where greater harm might result from making than from denying it.

*Injunction—Discharge of principal of state normal school without hearing.*

The board of trustees of a state normal school, in the middle of the school year, passed a resolution convicting the principal of immoral conduct and dismissing him from office, without notice or hearing. A successor was elected but the old principal continued to act. The trustees obtained an injunction to restrain the discharged principal from assuming to exercise the office. *Held :*

1. The action of the trustees in convicting the principal of immorality, and discharging him, without notice or hearing, was irregular and unjust, and, if no other considerations were presented than such as were personal to the trustees and the principal, the injunction would be dissolved.

2. The fact, however, that the school year is near its close, and the probability that greater harm would result to the school and to the public service from disturbing the injunction at this time than from sustaining it, will induce the court to let the injunction stand so far as it enjoins

against interference with the authority or functions of the new principal, or the management of the school.

3. The injunction should be sustained only to this extent, with a saving of all rights of the appellant to proceed at law for the collection of his salary for the remainder of the year.

*Costs—When to be paid by winning party.*

Costs in equity will be placed on the winning party, where, as in this case, an injunction to restrain an improperly discharged principal of a state normal school from exercising the office was sustained out of considerations for the public good but would have been dissolved on the merits of the controversy.

Argued April 27, 1892. Appeal No. 471, Jan. T., 1892, from decree of C. P. Erie Co., May T., 1892, No. 2, in equity, enjoining appellant from assuming position of principal of state normal school, etc. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

The bill, after setting forth the origin of the school, etc., alleged that defendant was not regularly employed as principal of the school because the yeas and nays had not been called by the board of trustees, and that he was dismissed, Feb. 5, 1891, by the action of the board, on account of immorality and negligence. The minutes of the board, made a part of the bill, showed the alleged immoral conduct to be the misappropriation of books, moneys, etc., and deception as to the distribution of classes among teachers, etc. The bill further alleged that defendant refused to vacate the position, and continued to act as principal. Defendant's answer admitted the truth of the last allegation, but denied the charge of immorality and alleged that he had received no notice from the board that he had been charged with any of the offences, asking that the injunction be dissolved.

The court refused the motion to dissolve the injunction, in the following opinion, by GUNNISON, P. J.:

[" The defendant, in his answer, and by the multitude of affidavits presented by him in support of this motion, has at great length denied all the charges contained in the plaintiff's bill, excepting the material one that he has been dismissed from the position held by him, by the action of the trustees of the school, had at a regular meeting, the reasons assigned therefor being sufficient in law.] [10] The defendant admits that fact

in his answer, but alleges that the dismissal was unlawful for the reason that the charges of immorality and negligence made against him are untrue; that he had no opportunity to disprove them, and that they were the result of a conspiracy entered into for the purpose of effecting his removal, by members of the board of trustees who were hostile to him. [The truth of the charges cannot be investigated in this proceeding. The board of trustees is the tribunal authorized by law to determine that question, and within the limits prescribed by the Act of Assembly their action is final.] [8]    [Having determined the charges to be true, it was in their discretion to remove the defendant.] [9]    ·This court has no appellate jurisdiction to review their decision. [Their action may have been unjust, impolitic and even malicious; it may have been in total disregard of the true interests of the school; the defendant may have been wrongfully dismissed; but, rightfully or wrongfully, he was dismissed; and when, in defiance of the authority of the trustees, he persisted in the attempt to retain the position, he was acting contrary to law.] [7]

" What redress he may have against the plaintiffs for the malicious exercise of their authority, it is not necessary to inquire here. This is not the proper proceeding, and no competent evidence has been offered upon which to determine that question.

[" I entertain no doubt as to the jurisdiction of this court to grant an injunction in this case.] [4]    [It is not the case of two individuals, each claiming the right to an office, the facts upon which the right depends being in dispute.] [5]    [Here the material fact is undisputed. There is no issue of fact to be determined. Upon the admitted fact the trustees dismissed the defendant at a regular meeting, assigning sufficient reasons, and observing all the formalities required by law, it must be held that his persisting in officiating as principal afterwards, entering upon the grounds, into the halls and class-rooms of the school for that purpose, were acts of trespass, for the prevention of which there was no adequate remedy at law, thus presenting a case peculiarly one for equitable intervention.] [6]    The distinction between it and the cases cited on behalf of the defendant upon the question of jurisdiction, is obvious.

" The importance to the school of a speedy decision, and the

lack of time, precludes the preparation of a more lengthy opinion, and an extended reference to the authorities, which are numerous."

*Errors assigned* were (1–3) granting, continuing and refusing to vacate preliminary injunction, quoting motions and orders; (4–10) opinion of court below as indicated by brackets, quoting them and alleging that paragraphs 6, 7, 9, 10, cited from the opinion, were wrong in their conclusions both as to facts and law; (11) granting the injunction and refusing to dissolve the same, quoting the writ.

*S. M. Brainard*, with him *S. A. Davenport*, and *Henry A. Clark*, for appellant.—The Act of April 11, 1862, P. L. 471, requiring the yeas and nays to be called, is a supplement to the Common School Act of May 8, 1854. The law creating and governing the normal school system was passed in 1857. There is nothing in the decisions or subsequent legislation making the Act of 1862 applicable to normal schools. Dyberry School Dist. v. Mercer, 115 Pa. 559; Cascade School Dist. v. Lewis School Dist., 43 Pa. 318, and Dennison School Dist., v. Padden, 89 Pa. 397, all arise from common school and not from normal school districts.

McCrea v. School Dist. 145 Pa. 550, and Whitehead v. School Dist., 145 Pa. 418, are authority for the position that where a school board acts in bad faith or abuses its powers of dismissal under the Act of 1854, such action is illegal and void. The board of trustees of a normal school was clothed with the same power of dismissal by the Act of 1885, P. L. 175. The above cases therefore rule this contention against the trustees, and for this reason alone the court should have dismissed the injunction.

Where the plaintiff's right is doubtful, a preliminary injunction will not be granted. The right must be clear or it will be refused: Harkinson's Ap., 78 Pa. 196; Waring v. Cram, 1 Pars. 516; Biddle v. Ash, 2 Ash. 211; Moore v. Ry., 3 Phila. 210; Cooper v. R R., 3 Phila. 262; Baxter v. Buchannan, 7 Phila. 317; Vomar v. Greer, 7 Phila. 453; McDonald v. Bromley, 6 Phila. 302; Windrim v. Phila., 8 Phila. 361.

The real question here is the title to an office in dispute.

Arguments.                              [June 1,

The remedy in such case is quo warranto: 2 Purd. 1408, § 2, clause 3. Besides, like all other cases of disputed right, it is subject to the rule that an injunction will not be granted until the question of right is settled in a court of law: Gilroy's Ap., 100 Pa. 5; Brown's Ap., 62 Pa. 17; Minnig's Ap., 82 Pa. 373; Hagner v. Heyberger, 7 W. & S. 104; Updegraff v. Crans, 47 Pa. 103; Gardner v. Village of Newburgh, 2 Johns. Ch. 164; Van Bergen v. Van Bergen, 3 Johns. Ch. 286; Mammoth Vein Coal Co.'s Ap., 54 Pa. 183; Rhea v. Forsyth, 37 Pa. 503; Rhodes et al. v. Dunbar et al., 57 Pa. 274; Schlecht's Ap., 60 Pa. 172.

The rule that an injunction will not be granted where it will be productive of greater injury than a refusal of it, and the damages are susceptible of compensation at law, is especially applicable to this case, and is established by the following authorities: Richards's Ap., 57 Pa. 105; Harkinson's Ap. 78 Pa. 196; Grey v. R. R., 1 Grant, 412; Mocanaqua Coal Co. v. Ry., 4 Brews. 158; Miller v. Sellers, 8 Phila. 286.

Courts will not restrain the commission of acts merely prejudicial to the community, except at the instance of the attorney general: Sparhawk v. Ry., 54 Pa. 401; Cox's Ap., 11 W. N. 571.

The courts will not grant relief by injunction unless the injury be irreparable: High, Injunctions, 259, 466. An injury is not irreparable if it can be compensated by proceedings at law: Clark's Ap., 62 Pa. 447.

Where there is a contrariety of testimony, the facts disputed and the right is not clear, an injunction will be refused: Clark's Ap., 62 Pa. 447; Story's Eq. Jurisprudence, 959; Harkinson's Ap., 78 Pa. 196; Murkil v. Morgan, 134 Pa. 155; Brown's Ap., 62 Pa. 17; Richards's Ap., 57 Pa. 105.

*G. A. Allen,* with him *L. Rosenzweig* and *John S. Rillings,* for appellees.—The court has jurisdiction as the trustees are, by Acts of Assembly, authorized to discharge teachers: Whitehead v. School Dist., 145 Pa. 418, and McCrea v. School Dist., 145 Pa. 550.

The material facts are not disputed. Defendant admitted in the court below and contends here that he is the lawful principal, against the authority of the trustees.

The plea of malice and bad faith cannot oust the jurisdiction and authority of the trustees. If such is the law, any teacher may commit acts of negligence and immorality and defy the directors by pleading not guilty and alleging bad faith on the part of the directors. As a fact, the power of the trustees is quasi-judicial and, when exercised in due form of law, must be final: McCrea v. School Dist., supra; Whitehead v. School Dist., supra. These cases decide that the charge of bad faith can be asserted only in an action for wages or damages.

The remedy by injunction is peculiarly adapted to this case: Kerr v. Trego, 47 Pa. 292; Early's Ap., 121 Pa. 510; Bierbauer's Ap., 107 Pa. 17.

Hagner v. Heyberger, cited by the other side, was repudiated in Stockdale v. Ullery, 37 Pa. 487, and Wistar v. McManes, 54 Pa. 318.

Appellant held his position only by sufferance, as he was not legally appointed, by the calling of the yeas and nays. Dyberry School Dist. v. Mercer, 115 Pa. 559, and cases there cited, apply, as state normal schools are a part of the common school system of the state.

OPINION BY MR. JUSTICE WILLIAMS, June 1, 1892.

The appellant had been for many years the principal of the State Normal School of the 12th District of Pennsylvania, located at Edinboro in the county of Erie. On July 3, 1891, he was regularly re-elected by the trustees to the same position. When the work of the school year began he was in his place discharging the duties devolving on him as principal without objection. On Feb. 5, 1892, the trustees adopted and spread at length on their minutes a resolution dismissing him from his position because of immoral conduct, which they specified in four distinct charges set out in the resolution. A few days later they elected his successor, and on the 18th of the same month they served him with the bill in this case and notice that an injunction would be moved for on the 22d. On that day a preliminary injunction was issued, commanding him "to cease assuming the position of principal of said school, and to desist from further trespassing on the premises or interfering with the authority of the trustees." The motion to dissolve was subsequently refused, and the injunction

continued.    The appellant was thus summarily ejected from his position about the middle of the year for which he had been regularly elected.    When he asked for a reason for such treatment he was pointed to his conviction upon four distinct charges of immoral conduct spread upon the minutes of the board of trustees.    When he denied the regularity of such action a court of equity was appealed to by the trustees to close his mouth and tie his hands.    He comes into this court by appeal, and asks whether he may be lawfully tried, convicted and sentenced without so much as notice that he is accused?

A good character is a necessary part of the equipment of a teacher.    Take this away, or blacken it, and the doors of professional employment are practically closed against him.    Before this is done there should be at least a hearing, at which the accused may show that the things alleged are not true, or if true are susceptible of an explanation consistent with good morals and his own professional fidelity.    We think it is plain, too plain for serious discussion, that the action of the trustees was irregular and unjust to the appellant.    If no other considerations presented themselves than such as are personal to the trustees and the appellant, we should not hesitate to dissolve the injunction; but the State Normal School and its work are also entitled to consideration.    The school year is near its close. Another principal has conducted its affairs since Feb. 9, and is in accord with the trustees.    The appellant cannot hope for a re-election.    In view of what has transpired, including his own conduct prior to the granting of the injunction, it is doubtful if his re-election would be helpful to him or the school.

It is often the duty of a chancellor to consider the consequences of a decree he is asked to make, and to withhold it where greater harm might result from making than from denying it. No appreciable good could result from the dissolution of this injunction at this time in the school year, and under existing circumstances.    Great harm to an important institution, under the care of the state, might result from such a decree.    Having regard to the public interests involved we shall leave the injunction to stand so far as it enjoins against interference with the authority or functions of the new principal, or the management of the school.    If it be thought to have any wider scope or pur-

pose, it is as to such purpose dissolved. This decree is made with a saving of all rights of the appellant to proceed at law for the collection of his salary for the remainder of the year.

The costs of this appeal to be paid by the appellee.