## Messner v. Railway Co.

*Injunction not of right, when good conscience does not require it.*

An injunction is not of right. It will not be issued when upon a broad consideration of the situation of all the parties in interest, good conscience does not require it.

*Trolley railway—Consent of abutting owner—Injunction when refused.*

An injunction to restrain the completion of a trolley track will not be granted when it appears that plaintiff's principal purpose in purchasing the property, the prior owner of which had verbally consented to the railroad, was to harass the defendant company, and when the case as presented is marked with such questionable methods as to prevent the plaintiff from deserving equitable relief. He will be remitted to his remedy at law upon defendant filling security for payment of such damages as may be recovered.

Argued Dec. 4, 1899. Appeal, No. 28, Oct. T., 1899, by plaintiff in a suit of John Messner against the Lykens and Williams Valley Street Railway Co., from decree of C. P. Schuylkill Co., July T., 1898, No. 2, dismissing bill for injunction. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by ORLADY, J.

Motion for preliminary injunction and rule to show cause why such injunction should not be granted. Before KOCH, J.

The facts sufficiently appear in the opinion of the court below, as follows:

The defendant company is incorporated under the act of assembly, approved May 14, 1889, P. L. 211, and is authorized by its charter to build an electric street railway from the borough of Tower City in Schuylkill county to the borough of Lykens in the county of Dauphin. Besides said borough its route lies in Porter township, Schuylkill county, in the townships of Williams and Wiconisco in Dauphin county, and in the borough of Williamstown in the latter county. The entire length of the route is about ten and three quarters miles, and it lies on the public road which is abutted on each side by the complainant's land consisting of eight acres and forty-five perches in said township of Porter. The distance so abutted by complainant's land is 256 feet.

[The defendant, acting on the belief that it had municipal consent to build the road from one end to the other and that it had also acquired consent from all abutting owners in the townships named, entered into large contracts for necessary materials and commenced the building of the said railway on April 18, 1898.] [2]

The complainant alleges in his bill that his consent had not been obtained, and asks us to restrain the defendant from building the road.

Defendant laid its tracks over the 256 feet in question after complainant's bill had been filed but before the time fixed for the hearing on the above motion and rule. Prior to that it had laid over a mile of track beginning at the eastern end of Tower City and building west towards Lykens.

[One Isaac Patrick was the owner of said land up to May 4, 1898, and was seen by one Isaac Thompson as early as January or February, 1898, regarding his consent for building the proposed railway. Thompson was acting for the railway company and says that Patrick told him that he would not sign any papers for the right of way, but that the company could go on, and that he would not make it any trouble. Thompson reported the facts to Dr. Ickes, general manager of the company.] [3]

On April 30, 1898, after the company had been occupied for twelve days in building the railway, Patrick served written notice on the company not to lay any tracks upon the highway over his property. On May 3, 1898, Patrick agreed to sell the land to John Messner, his brother-in-law, and on the following day he made a deed for the same and delivered it, the consideration being $1,400. Patrick had owned the land about one year, had given $850 for it, and had expended about $300 in improvements. Messner who is the track foreman on the Williams Valley Railroad (which parallels the proposed electric railway) borrowed from C. M. Kaufman, general manager of the latter railroad, $225. He used $200 thereof to pay the down money to Patrick, and gave Patrick a mortgage for the other $1,200 at six per cent interest, and on the same day, namely, May 4, 1898, leased to Patrick the same land for one year at a rental of $72.00 and the insurance and taxes. Messner knew that the electric railway was building at the time he purchased from Patrick, and that it would run on the public road through his land. He told Patrick that he should keep up an appearance of owning the land until he, Messner, would have his deed recorded, and that he was going to file a bill in equity against the railway company. Messner did not inquire, nor did Patrick tell him whether or not he, Patrick, had given his consent to the company to build the railway.

When Messner was asked why he bought the property, he said that Isaac Patrick and Frank Patrick are brothers-in-law to him; that Frank lives on this land, whilst Isaac lives in a store at Tower City; that Frank's wife died last spring, and that he, Messner, was afraid, that if the land passed into the hands of a stranger, Frank and his family would be thrown out of the place, and that he bought it to protect Frank.

When Isaac Patrick was asked why he immediately leased the land after selling it, he said that he had some grain there, and that he had made some kind of a verbal agreement with his brother Frank that he should have the stuff that he could raise in the upper field, and that he did not want to throw Frank out of it. Both Messner and Isaac Patrick, according to their testimony, were solicitous about Frank Patrick's possession; neither wanted him thrown out. Messner was asked why he leased to Isaac and not to Frank, if he was so anxious about Frank, and he said he was sure Isaac would pay him and that Frank might not be able to do so, that he was sharp enough for that. It will be noticed that Messner paid Patrick an advance of $250 on his investment, then turned right around and leased to him the same ground at a loss of $13.50 for the year, for he received but $72 as rent, whilst he paid $85.50 in interest, and at the same time had in contemplation an expensive lawsuit with the defendant company.

When asked whether he had kept up the appearance of ownership after the sale as Messner had requested, Isaac Patrick answered that he had, that he had lied to Dr. Ickes. In other words, even after Patrick knew that Messner was going to file a bill in equity to restrain the defendant, he and Messner both kept the defendant in the dark as to their acts and intentions, and let it spend large sums of money and make large contracts for the promotion of its expensive enterprise.

[Isaac Patrick says that he did not tell Isaac Thompson that the company could go on and that he would make it no trouble. In the light of Patrick's own testimony, we do not think he is entitled to the same credibility as Thompson. But he brings his clerk, William Lewis, to the stand for corroboration. Lewis says that when Mr. Thompson asked Mr. Patrick whether he would sign off, Mr. Patrick said he would not, that he wanted to see Mr. Ickes—he should send him out. Lewis was at

work whilst Thompson was in the store (he remained about fifteen minutes after Lewis heard the above remark) and cannot say that he heard all that was said. He cannot contradict Thompson on the most material point, namely, consent. We are disposed to believe that Thompson tells the truth.] [3] He was anxious to see the railway built, and it was quite natural for him to report only the truth to Dr. Ickes, for he knew that consent was important, that without it the railroad could not be built.

Messner secretly bought the property with full knowledge of this railway enterprise and of the rapid progress it was making, and with the evident intention of blocking and blasting it as soon as his deed could be recorded. What motive prompted him to do this? Surely not his solicitude for Frank Patrick's welfare, because Isaac looked after that himself at the time when Messner bought the property. The whole transaction between Patrick and Messner appears to us in an unfavorable light. [By his silence from the 4th to the 9th of May, Messner permitted the railway company to go ahead without notice of his intentions, expending much money. The company's reservoir is provided for, the walls of its power house are going up, much of its track is laid and its contracts are being fulfilled. The actual damage, if any, to Messner's land is very little compared to that which the railway company would suffer, if prevented from proceeding any further.] [4] The grade of the street is no doubt improved, and the entrance therefrom to complainant's field will not be rendered more difficult thereby. Knowing what he did at the time of his purchasing, Messner was affected with sufficient notice to put him upon inquiry as to the defendant company's rights.

The plaintiff amended his bill after defendant's answer was filed by adding as follows:

" Section 9. That the said defendants have not legally obtained the consent of the proper officers of Porter township, Schuylkill county; Williams township and Wiconisco township in Dauphin county to the occupation of the public highways in said townships for the construction of the railway; and in the townships of Wiconisco and Williams in Dauphin county, the said defendants as the complainant is informed and believes. obtained the consent of the supervisors

of said townships, by promises of reward and thereby invalidated any consent so obtained."

"The said defendants have failed to get consent from a number of owners of real estate along the line of the proposed railway in the township of Porter in Schuylkill county, and in the townships of Williams and Wiconisco in Dauphin county."

Plaintiff filed no replication and we permitted the amendment to be made. It is not sworn to, but testimony was taken by both sides regarding the allegations in said amendment contained.

[The consents of the different townships as originally given are in writing from the supervisors of the respective townships to the company, and are not evidenced by any minutes properly kept by the township clerks, but the railway was being built with the approval and under the direction of the supervisors of Porter township, at least when complainant's bill was filed. Since the amendment was filed, the defendant has properly obtained the formal and official consent of each of the townships. Nor has the complainant properly made out a case in any respect under the added clause of his bill. We will therefore dispose of the matter before us upon the other facts in the case as the same are herein above stated.] [8]

In equity a decree is not of right but of grace, and a chancellor will refuse to enjoin if in conscience it appears he would do greater injury by enjoining than by leaving the party to his redress by a court and jury: Richards's Appeal, 57 Pa. 105; Dilworth's Appeal, 91 Pa. 247.

An injunction is not of right. It will not be issued when upon a broad consideration of the situation of all the parties in interest, good conscience does not require it: Heilman v. Lebanon, etc., Ry., 175 Pa. 188.

Equity does not enforce a strict legal right regardless of consequences. It is said that an injunction is of grace. This does not mean that a chancellor may grant or refuse an injunction as he pleases, but that his action is controlled by considerations of conscience. He does that which in good conscience he ought to do: Heilman v. Railway Company, 180 Pa. 627.

An injunction will not be granted except in a clear case— to doubt is to refuse: Picar v. Bovolak, 7 Kulp, 240; Wilkes-Barre Gas Company v. Wilkes-Barre, 6 Kulp, 431; Lehigh and

Wilkes-Barre Coal Company v. Delaware and Hudson Canal Company, 11 Pa. C. C. R. 185; Gummere et al. v. Lehigh Valley Railroad Company et al., 12 Pa. C. C. R. 106; City of Scranton v. Delaware and Hudson Canal Company, 12 Pa. C. C. R. 283.

In Union St. Ry. v. Hazleton Ry., 154 Pa. 422, the former company had authority legally given to occupy the street. The latter company had the written consent of the supervisors previously given in an illegal manner, and relying upon that written consent had expended $50,000 in cash and had incurred a liability of $50,000 more upon contracts made in good faith upon that written consent, and the Supreme Court dissolved the preliminary injunction which, at the instance of the plaintiff company, had issued to restrain the defendant from building its railway.

At present an action at law is the only remedy within the reach of an injured person who has suffered a railway to be built across his land without objection, but equity will interpose to protect him if he comes in proper time, by enjoining the construction until his damages have been paid or secured to his satisfaction: Penna. R. Co. v. Montgomery Co. Pass. Ry., 167 Pa. 62. No injunction affidavits nor bond have been filed, but even if they had been, sufficient has not been shown to entitle the complainant to an injunction at this time.

[And now, July 18, 1898, the above motion and rule came on to be heard on bill, answer and proofs and were argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed, that said motion and rule be discharged, if the defendant within ten days from the date of this decree file a bond in the sum of $1,000 with security to be approved by the court, conditioned for the payment to John Messner of all damages to which his land and buildings situate in the township of Porter shall have been subjected and will be subjected by the location, construction, maintenance and operation of the defendant's railway in the public highway abutting said land.] [12]

Plaintiff appealed.

*Errors assigned* among others were (1) in refusing injunction prayed for, the bill showing a clear equity entitling the plaintiff to that relief and the testimony establishing a clear right to

the writ. (2) In deciding that the defendant company had acquired consent from all the owners of property abutting on the public road along the route of its proposed railway, said finding being contained in the opinion of the court, reciting portion of opinion. (3) In deciding that the defendant company had obtained consent to construct, maintain and operate its railway on the public highway, laid over land the fee of which is in the plaintiff, such finding being inferred from the opinion of the court, reciting portion of opinion. (4) In refusing the injunction prayed for upon the ground, inter alia, that plaintiff by his silence let it (the railway company) spend large sums of money and make large contracts for the promotion of its expensive enterprise, such finding is contained in the opinion of the court, reciting portion of opinion. (8) In deciding that the defendant company had obtained the consent of the authorities of the township of Williams, in Dauphin county, to construct, maintain and operate its railway on the public roads in that township, said consent being invalid because the supervisor was influenced in giving it by the hope of being rewarded with employment and because it was not given at a regularly called meeting, nor entered in the township book kept by the town clerk. This decision is contained in the opinion of the court, reciting portion of opinion. (11) In admitting evidence several weeks after the close of the case, against the protest and objection of the plaintiff, as follows : "1. Consent of Amos Batdorff, supervisor of Wiconisco township, dated June 23, 1898, and 'extract of minutes of the supervisor of Wiconisco township as of record.' Attested by Sol. P. Batdorff, clerk. 2. Consent of Jeremiah R. Carl, supervisor of Williams township, dated June 18, 1898, and 'extract from the minutes,' attested by Newton Durbin, township clerk. 3. Consent of Adam Bendigo and J. W. Hoffman, supervisors of Porter township, Schuylkill county, dated June 17, 1898, and 'extract from the minutes of the meeting of the supervisors of Porter township,' by W. H. Long, township clerk."

*E. P. Leuschner* and *Jno. F. Whalen*, for appellant.—It is settled law that a street railway company chartered under the act of May 14, 1889, before it can enter upon the building or construction of any part of its road must have the proper con-

sents of the several municipalities through which its proposed route passes, and it must also obtain the consent of every property owner along the roads it wishes to occupy : Pa. R. R. Co. v. Ry. Co., 167 Pa. 62 ; Traction Co. v. Canal Co., 1 Pa. Superior Ct. 409 ; Penna. R. Co. v. Electric Ry. Cos., 179 Pa. 584; Phila. & Trenton R. R. Co. v. Phila. & Bristol Ry. Co., 6 Pa. Dist. Repr. 487 ; Heilman v. Lebanon St. Ry., 175 Pa. 188 ; Heilman v. Lebanon St. Ry., 180 Pa. 627.

Now, an easement of this nature can be acquired only by grant, and, being an interest in land, must be in writing and signed by the parties, otherwise the grant will not conform to the requirements of the statute of frauds and perjuries, which makes a parol contract for the sale of land, or of an interest therein void : Huff v. McCauley, 53 Pa. 206 ; Hess v. Calender, 120 Pa. 139, 153 ; 10 Am. & Eng. Ency. of Law (2d ed.,), p. 409.

All this would have confronted the respondent had Patrick sought to enjoin the building of the railway over this land while he was still the owner thereof. The complainant's position is still stronger. He is now the owner of the premises, having purchased them for a valuable consideration. The grant of an easement, such as a right of way, is within the recording acts, and unless recorded is inoperative against subsequent purchasers for value and without notice : 10 Am. & Eng. Ency. of Law (2d ed.), 410 ; Fries v. Null, 158 Pa. 15.

*S. H. Kaercher* and *J. C. Durbin*, with them *D. W. Kaercher*, for appellee.—Messner may have a right of action (Thompson v. Traction Co., 181 Pa. 131) by reason of special damages to his own property, but there his right stops.

The nonconsent of one or more abutters is no ground for an injunction at the instance of another abutter: Phila. & Trenton R. R. Co. v. Railway Co., 6 Pa. Dist. Rep. 487.

It is sufficient to state that where no consent, either written or parol, has been obtained, the Supreme Court has refused to sanction the granting of an injunction, and has allowed railway companies to build, maintain and operate their roads, on the ground that it is a question more for equitable than strictly legal determination: Heilman v. Lebanon, etc., Railway Co., 175 Pa. 188; Heilman v. Lebanon, etc., Railway Co., 180 Pa. 627 ; Union Street Ry. Co. v. Hazleton Ry. Co., 154 Pa. 422.

The Supreme Court will not reverse a finding of the trial

judge where the whole case turns upon the credibility of the witnesses: Barlott v. Forney, 187 Pa. 301.

The findings of a court under the new equity rules, especially if the credibility of the witness be a factor, will not be set aside on an appeal unless there be manifest errors: Mackintyre v. Jones, 9 Pa. Superior Ct. 543; Hancock v. Melloy, 187 Pa. 371.

A mere legal right in the plaintiff will not move the court if upon a consideration of the whole case an injunction ought not in good conscience to issue: Power's Appeal, 125 Pa. 175.

A chancellor in such case will consider whether he would not do a greater injury by enjoining than would result from refusing and leaving the party to his redress at the hands of a court and jury: McCaffrey's Appeal, 105 Pa. 253.

An injunction will never be issued by a court of equity when it will inflict a greater injury than it will prevent: Penna. R. Co. v. Railway Co., 176 Pa. 559, 577.

An injunction will not be issued when upon a broad consideration of the situation of all the parties in interest good conscience does not require it: Railroad Co. v. Railway Co., 184 Pa. 227.

The case of Heilman v. Lebanon and Annville Street Railway Company, 175 Pa. 188, is very similar to the case at bar: Becker v. Railway Co., 188 Pa. 484.

OPINION BY ORLADY, J., April 23, 1900:

The decree, entered by the court below in discharging the rule for a preliminary injunction, imposed such terms upon the defendant company as will fully secure all damages that the plaintiff has suffered in consequence of the construction and operation of the street railway on the public highway on which his property abuts.

In the light of the testimony, it is apparent that the plaintiff's principal purpose in purchasing this property was to harass the defendant company. The case as presented is marked with such questionable methods as to prevent the plaintiff from securing equitable relief. The findings of fact by the court below are sufficient to justify the decree made, and while there are conspicuous errors of practice in the proceeding, they are harmless so far as the decree is concerned.

The decree is affirmed.