## Barnum v. Washington County Commissioners

Before Brownson, P. J., and Hughes, J.

*W. R. Dennison* and *Patsy V. Marino*, for plaintiff.

*Norman E. Clark*, county solicitor, *A. L. Zeman*, and *Thomas L. Anderson*, for defendants.

PER CURIAM, November 6, 1933.—The Hon. Erwin Cummins, a judge of this court, being a candidate for reëlection, was nominated by the Republican Party for this office. He died on November 2, 1933. On November 3, 1933, the executive committee of the Republican Party of this county, proceeding in accordance with the provisions of law, chose as the substituted nominee of the party for the office of judge, C. L. V. Acheson, and this substituted nomination, was duly certified in accordance with law. The county commissioners then proceeded, for the purpose of substituting Mr. Acheson's name as a candidate of the party upon the ballots to be used at the election on November 7, 1933, to reprint said ballots so that Mr. Acheson would be named as that candidate. About 5 o'clock p. m., on Saturday, November 4, 1933, the plaintiff presented a bill in equity, praying for an injunction against the county commissioners, restraining them from reprinting ballots or delivering to election officers reprinted ballots. The hearing upon a motion for a preliminary injunction was thereupon set for Monday morning, November 6, 1933, and that hearing has been held. At this hearing counsel for the plaintiff made a motion for the granting of a preliminary injunction in the following form:

"And now, to wit, November 6, 1933, the within bill of complaint being pre-

sented and after due hearing thereon, it is ordered, adjudged, and decreed as follows:

"(a) That J. Elmer Johnston, W. A. Barnes and John N. O'Neil, County Commissioners of the County of Washington, Pa., are hereby restrained from printing or causing to be printed, new ballots to be used at the election on Tuesday, November 7, 1933.

"(b) That J. Elmer Johnston, W. A. Barnes and John N. O'Neil, county commissioners as aforesaid, are restrained from causing the name of the substituted candidate for judge of the Court of Common Pleas of Washington County to be printed on any ballot to be used at the election on Tuesday, November 7, 1933.

"(c) That J. Elmer Johnston, W. A. Barnes and John N. O'Neil, county commissioners as aforesaid, are restrained from destroying the ballots already printed.

"(d) That the ballots already printed are hereby impounded, to be released for delivery to the proper election officers in each election precinct in Washington County."

It is not averred in the bill, nor was it claimed at the hearing, that the county commissioners, in pursuing the course which they have undertaken to follow, were guilty of any fraudulent practices or motives or were proceeding otherwise than with a bona fide purpose to perform their official duty, and it appears from a letter of the Attorney General which was produced at the hearing that in what they have done they were following advice obtained from him, first by telephone and then confirmed by letter, to the effect that such reprinting of the ballots would be the proper course for them to pursue.

It appears from the averments of the bill itself and from the statements of counsel at the argument that this bill is based upon section 12 of the Act of June 10, 1893, P. L. 419, the relevant portion of which reads as follows: "As soon as any substituted candidate shall have been duly nominated, his name shall be substituted by the proper officers in the place of that of the candidate who has died or withdrawn so far as time may allow, and in case a substituted nomination be filed with or transmitted to the county commissioners after the ballots have been printed, the said commissioners shall prepare and distribute with the ballots suitable slips of paper bearing the substituted name, together with the title of the office, and having adhesive paste upon the reverse side, which shall be offered to each voter with the regular ballot and may be affixed thereto."

The argument for the plaintiff as to the proper interpretation of this section is that the second clause of the second paragraph thereof, beginning with the words "and in case" makes it a mandatory duty of the county commissioners to prepare and give out stickers in every instance where a substituted nomination is filed after the ballots have been printed. The contention of the defendants is that this section must be interpreted as a whole, the first portion thereof stating that in the event of a substituted nomination the name of the substituted candidate shall be placed upon the ballots as printed "so far as time may allow", that in this case, the commissioners having ascertained that there was sufficient time between the filing of this substituted nomination and the election to allow the reprinting of the ballots, it was permissible for them to take this course, and that they were not bound to subject the voters of the county to the unsatisfactory method of voting for this office by means of stickers; in other words, that they are required to resort to the use of stickers only when time will not allow the making of a substitution by means of the reprinting of the ballots.

Counsel further argued that in this instance there was not sufficient time to educate the voters with regard to the proper method of making use of stickers and that, if they should be required to observe this method of voting, many voters would doubtless lose their votes through misapprehension as to the proper method of casting them.

At the time when the original bill was presented, the complainant filed it in the character of an individual citizen and taxpayer of the county. By the amended bill, he states that the bill is brought by him on behalf of himself and other taxpayers of the same class, and also as a member of the Democratic executive committee of Washington County.

The first question that presents itself is as to the standing of the plaintiff to maintain this bill for an injunction. It does not appear from the averments of the bill, nor from anything presented at the hearing, that the use at the election of the reprinted ballots will infringe upon or in any way affect any right of the plaintiff or other citizen represented by him, or any right of the committee of which he is a member, existing under the Constitution and laws of the State. The only right of the individual citizen or of a committee of a political party with respect to ballots, which may be asserted under the law, is that these ballots shall be prepared in such a form as to afford to all electors a full, fair and unhindered opportunity to give expression to their desires as to who shall fill the office; and certainly, the printing on the ballot itself of the name of the substituted Republican nominee in the same place and in the same manner as if he were the original nominee, would not in the slightest degree interfere with such an expression of popular will, but, on the contrary, would facilitate and greatly promote the ability of voters to give such an expression by rendering it much easier for voters to comprehend the proper method in which their will on this subject is to be expressed. On the other hand, if the argument presented for the plaintiff that the act of assembly makes it a mandatory duty of the county commissioners, instead of reprinting the ballots under the circumstances which exist here, to use the original printed ballots, letting them stand as they are, and then to prepare stickers to be handed to voters with those ballots, be sound, then the duty resting upon the commissioners would be a duty owing not to individual voters as individuals but to the public, and it appears to us that in such event the proper complainant would be the Commonwealth of Pennsylvania at the relation of the Attorney General or district attorney: Sparhawk v. The Union Passenger Ry. Co., 54 Pa. 401, 421; Wilson v. Blaine et al., 262 Pa. 367, 373.

The respective contentions of the parties as to the proper interpretation to be given to section 12 of the Act of 1893 raise a serious and difficult question. It is a recognized principle that ordinarily an injunction, at least a preliminary injunction, will not be issued if the question upon which its issue depends is a doubtful and difficult question of law: City of Philadelphia's Appeal, 78 Pa. 33; Fritz v. Erie City Passenger Ry., 155 Pa. 472. The question of the proper construction of section 12, in the light of the pervading intent of the act as a whole and of the general aim and purpose of the election laws, is, in our opinion, a question having sufficient doubt to bring into play this principle.

Again, it is a recognized principle that ordinarily an injunction will not be granted when, in the opinion of the court, it would work more harm than good: Edinboro Normal School v. Cooper, 150 Pa. 78, 84; Wahl v. Cemetery Association, 197 Pa. 197. In this case, it was stated at the hearing and not denied that, at the time when the original bill was first presented to the court, the county commissions had already received delivery of and had placed in the hands of distributors to be taken to election officers, reprinted ballots for about 40 of the

election precincts in the county, and further, at the time when the amended bill was presented, the ballots had been reprinted for all election districts in the county and had been delivered to the county commissioners, and a large proportion of them were already in the course of distribution. Under the circumstances which appear in this case, to grant the injunction prayed for would have the effect of producing intolerable confusion in connection with the conduct of this election, while, on the other hand; to refuse the injunction will deny to complainants none of their rights as citizens, and moreover, to refuse to interfere with the use of the reprinted ballots would, in our judgment, permit the carrying out of the general spirit and intent of the election laws by rendering easier the exercise by the electors of their right of franchise.

Although it is not embraced in the motion for a preliminary injunction, there is in the bill a complaint against the payment by the county commissioners of the expense of reprinting. Notwithstanding the fact that taxpayers would be entitled, if payments from the county treasury are illegally made, to ask for a surcharge, it seems that a bill to restrain the making of illegal payments of money before they are made, will lie; but in this case an injunction on that subject was not asked for in the motion that was made, and we think it unnecessary to discuss the question whether the plaintiffs have any remedy in that respect.

In our judgment, in order to safeguard against the making of any improper use of the ballots originally printed, the commissioners ought to impound them and keep them under lock and key until the election is over and the official count completed, and we suggest to them the observance of this course.

And now, November 6, 1933, the motion made by the plaintiff for a preliminary injunction is denied and the injunction asked for is refused.

From Harry D. Hamilton, Washington, Pa.