## Hibbered v. Rose Tree Media School District

*Richard Anderson,* for plaintiffs.
*John Steuerwald,* for defendants.

LYNCH, *J.,* September 9, 1985—This matter comes before the court on argument and briefs as a

petition for a preliminary injunction. Petitioners consist of a group of taxpayers in the Rose Tree Media School District, four of whom are also "minority members" of the school board. They seek to temporarily enjoin respondents from paying sums of money to David C. Campbell, the newly-seated superintendent, who is also a named defendant. They additionally seek to enjoin any further action with respect to Dr. Campbell pending a full hearing on their petition in a related case, to remove certain other school board directors.

Before a court sitting in equity will grant an injunction, it must consider certain well-settled principles. Petitioners must clearly demonstrate that they are subject to immediate, permanent and irreparable harm, Miller v. American Tel. and Tel. Corp., 344 F.Supp. 344 (1972), for which there is no full, complete and adequate remedy at law. St. Joe Minerals Corp. v. Goddard, 14 Pa. Commw. 624, 324 A.2d 800 (1974). While an injunction will not generally be granted where a particular remedy is provided by statute, Commonwealth v. Glen Alden Corp., 418 Pa. 57, 210 A.2d 256 (1965), one may be granted where the statutory remedy is not both complete and adequate. Rankin v. Chester-Upland School District, 11 Pa. Commw. 232, 312 A.2d 605 (1973). In making such a determination, the court will look to the circumstances alleged in the petition of each particular case. Tulio v. Com., State Horse Racing Com'n., 79 Pa. Commw. 305, 470 A.2d 645 (1984).

Notwithstanding all of the above, an injunction should not be granted where the benefit to plaintiff will be disproportionate to the injury to defendant. The court must also consider injury or inconvenience which may result to the public, Edinboro Normal School v. Cooper, 24 Atl. 348 (1892), and

will deny the petition where great public inconvenience would result. Id., Seltzer v. Metropolitan Electric Co., 199 Pa. 100, 48 Atl. 861 (1901).

In the case at bar, petitioners allege numerous facts in support of their petition. These include, inter·alia, that the five "majority members" of the school board conspired to subvert the will of the public they represent by refusing to renew the contract of former superintendent Henry T. Nacrelli, and instead voted to hire David C. Campbell. That decision, and the negotiation of Dr. Campbell's contract, were allegedly completed in secret sessions, limited to majority members, in a manner contrary to the spirit, if not the letter of the "Sunshine Law," Act of July 19, 1974, P.L. 486, as amended; 65 P.S. §261 et seq., and were presented as a fait accompli, without benefit of input from the minority members of the board, contrary to the School Code of 1949, as amended, 24 P.S. §3-301. Additionally they allege that certain funds were illegally transferred to pay Dr. Campbell as a consultant on a per diem basis prior to the commencement of his official duties on July 1, 1985, thus violating section 6-609 of the School Code. Petitioners further allege violation of section 10-1073 of the School Code, which they assert goes directly to the issue of the validity of Dr. Campbell's contract; specifically, they allege that the majority changed the "regular place of meeting" of the board for the meeting at which Dr. Campbell was elected, and that such action renders Dr. Campbell's contract void.

In addressing petitioners' allegations, it must first be pointed out that the Sunshine Law requires only that any agency as defined in the law, which votes or is scheduled to vote on any resolution, rule, etc., or acts in any formal way to take definite action or establish official policy, must do so at a public meet-

ing. Judge v. Pocius, 28 Pa. Commw. 139, 367 A.2d 788 (1977). Whatever advance planning may have gone into the decision to elect Dr. Campbell, it is clear that no official action was taken until March 27, 1985, when Campbell was elected at an open meeting. We find no clear violation of the Sunshine Law under the circumstances.

Petitioners contend that insofar as the actions of the majority members of the board are contrary to law, such actions and any situations resulting from them constitute immediate, ongoing, irreparable harm. Commonwealth v. Coward, 489 Pa. 327, 414 A.2d 91 (1980); Pa. P.U.C. v. Israel, 356 Pa. 400, 52 A.2d 317 (1947). Moreover, citing Rankin, supra, they contend that the statutory remedy of surcharging the school board directors for improperly expended funds provided by sections 24-2401 and 24-2406 of the School Code is not adequate.

The violation of law discussed in Coward, supra, involved the Clean Streams Law. There, the court held that "[w]here a statute proscribes a certain activity, all that need be done is for the court to make a finding that the illegal activity occurred." 414 A.2d at 98. The Coward court could make that finding based upon a final order of the Department of Environmental Resources that defendants therein abate a particular nuisance.

In P.U.C. v. Israel, defendants were operating taxicabs without having obtained proper certification, which would impact on the safety and welfare of the public.

The violation of law alleged in the instant case is that the meeting at which the superintendent was elected was not held in its regular place. The purpose of the requirement is to assure that the public has a knowledge of the location and has an opportunity to be present. Where school board directors

meet at a site other than the regular meeting place, the meeting is not illegal if it is held under such circumstances as to indicate that the meeting was open and available to the public had they desired to attend. Brubaker v. Londonderry Twp. School Bd., 64 Dauph. 202 (1953), exceptions overruled 64 Dauph. 356 (1953). We note that several hundred members of the public attended the March 27th Board meeting, and cannot find that a meeting held under such circumstances was clearly illegal.

In Rankin, petitioners sought to enjoin payments by the school district to Abbott W. Thompson Associates, an architectural firm, alleging a void contract, because the board passed a resolution authorizing the execution of a contract between the district and a named individual, Abbott W. Thompson, architect. Rankin alleged that payments made in excess of $170,000 were in violation of Federal Wage Regulations, that some payments were for unauthorized work, that invoices under which payments were made were not detailed or verified, and that payments made and to be made would cause irreparable damage to the school district and the taxpayers. The court found that, given the large sum of money in question, the school code's provisions for audit and surcharge of school directors might not be adequate, as it was not possible to determine if the school directors would be financially able to cover the alleged illegal payments. Consequently, the case was remanded to the trial court for further proceedings.

In the present case, as in Rankin, a statutory remedy is provided in the school code. Here, however, there are no allegations as to the extent of the monetary damages involved, nor that the directors will be unable to pay damages should they be subject to the surcharge. Therefore, this court cannot find as a

matter of law that the statutory remedy available to petitioners is inadequate or incomplete.

Petitioners allege that only five people, rather than the nine required by section 3-301 of the School Code, are running the school district, but the fact that the majority's will is diametrically opposed to the minority's will does not clearly indicate a violation of the code.

The real harm complained of in this petition relates to a completed past action: the election of David Campbell as superintendent. They admit, as they must, that Dr. Campbell is qualified for the position of superintendent. Were this not so, he would not have been certified as being qualified by the Secretary of Education of the Commonwealth. They further admit that had their first choice, Henry Nacrelli, not been available, David Campbell would have been acceptable to them. The search for, and election of, a superintendent fall within the discretionary powers of the board. "Discretionary actions of a governmental body may not be reviewed by a court absent bad faith, fraud, capricious action, or an abuse of power. Moreover, municipal officers are presumed to act properly and in furtherance of the public good." Lareq v. Van Orden, 21 Pa. Commw. 623, 346 A.2d 922 (1976), citing Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446, 160 A.2d 539 (1960). "Speculative hypotheticals which allude to motive and the possible consequences of decisions based thereon do not justify judicial review of the discretionary acts of municipal authorities." Id., citing Flaherty v. Allegheny Port Authority, 450 Pa. 509, 299 A.2d 613 (1973).

If, as petitioners contend, the majority board members acted illegally in electing Campbell, then appropriate remedies exist. To enjoin payment of wages to Dr. Campbell would probably have the ef-

fective result of removing him, since no one can be expected to work without compensation. Dr. Campbell has taken over direction of the school district and has served the district in preparation for the new school year. To prematurely deprive the district of its chief executive officer, and Campbell, a named defendant, of his livelihood, would cause greater harm than would the denial of an injunction in this case. An injunction should not be granted where it will work greater injury than the wrong from which redress is sought. Messner v. Lykens & W. Val. St. Ry. Co., 13 Pa.Super. 429 (1900).

For the foregoing reasons, we enter the following

## ORDER

And now, this September 9, 1985 upon consideration of oral argument and briefs of counsel, it is ordered that a preliminary injunction be and is hereby denied.