# Leisenring *v.* Pennsylvania Lighting Company, Appellant.

*Corporations—Gas companies—Liability of tenant for former tenant's gas bill.*

1. A gas company chartered for the purpose of supplying with gas a municipality and such individuals residing therein as might desire gas, and having the right of eminent domain, is bound to supply gas to any resident of the municipality, and it cannot refuse such a supply to an owner because of a refusal of the latter to pay a former tenant's gas bill, if it appears that the owner before going into possession as vendee had no actual notice that he would be required to pay such bill, and was not affected with constructive notice by any resolution or by-law of the company to that effect.

2. Where a vendee retains out of the purchase money a sum to pay certain claims against the vendor including a claim of a lighting company for gas, and the fund is not sufficient to pay all of the claimants, the vendor is not barred from maintaining a bill in equity against the gas company to restrain it from cutting off the gas, because the vendor had refused to pay the gas company more than its pro rata share of the fund.

*Equity—Jurisdiction—Preliminary injunction—Mandatory order—Restoration of status.*

3. It seems that on an application for a preliminary injunction, a court of equity may make a mandatory order restoring the status quo; but such jurisdiction is not to be exercised except in the clearest cases, and only so far as is necessary to restore the status quo.

Argued Oct. 28, 1914.   Appeal, No. 245, Oct. T., 1914, by defendant, from order of C. P. Northumberland Co., Equity Docket No. 381, awarding injunction in case of Katharine A. Leisenring v. Pennsylvania Lighting Company.   Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.   Affirmed.

Bill in equity for an injunction.

MOSER, J., filed the following opinion:

On April 26, 1913, the plaintiff purchased a cigar and confectionery store, with fixtures, from Gertrude M.

Farley, wife of Eugene A. Farley.    The business was carried on at the southeast corner of Independence and Rock streets, in the borough of Shamokin, where the Farleys had conducted it for some time.    The plaintiff paid $25.00 down money to the vendors and the balance of the consideration, to wit, $1,425, was given by the plaintiff to Mr. Morganroth, her counsel, for the purpose of protecting Farley's creditors as far as possible, as well as the interests of the purchaser.    It developed that the vendors' debts were far in excess of the purchase price agreed upon and a pro rata distribution of the money on hand netted the creditors 46.43 per cent of their respective claims.    At the time the Farleys sold the business they were indebted to the Pennsylvania Lighting Company in the sum of $17.06 for light and power used at the store and for $11.36, the balance due on a gas cook stove used at their residence, making a total of $28.42, which was the amount of the claim filed by the defendant with the plaintiff's counsel.    On or about July 9, 1913, said attorney tendered the defendant a check for $13.20, being 46.43 per cent of $28.42, the claim presented by the light company, which said check was marked, "In full settlement of claim v. G. M. Farley."    The defendant refused to accept the check in payment of the Farley debt and soon thereafter admitted the correct amount of its claim against the Farleys for light and power to be $17.06, for which sum demand was made under penalty of discontinuing the service. The plaintiff refused to pay more than $13.20, contending that this amount was more than the defendant was entitled to receive since it could not collect more than 46.43 per cent of $17.06 while this amount was 46.43 per cent of $28.42, and on September 17, 1913, the defendant made good its threat by severing the wires and depriving the plaintiff of current.    The plaintiff then filed this bill and a preliminary injunction was awarded directing a reinstatement of the services.    We are here asked to continue the injunction and make it permanent.

The plaintiff contends that the defendant company was incorporated for the express purpose of supplying gas and electric current for lighting and heating and for furnishing power to the borough of Shamokin and such individuals residing therein, and in the vicinity thereof, as might desire the same; that special privileges and franchises were conferred upon said corporation to carry out said purposes, that by virtue of said grants from the commonwealth, there is an implied duty upon the defendant to furnish gas and electric current to the plaintiff at her place of business in Shamokin borough so long as she complies with all reasonable rules and regulations of said company. The defendant does not dispute the soundness of this contention very seriously, but takes the position that since plaintiff refused to pay the arrearages of the previous tenant after due notice, it had a legal right to discontinue the furnishing of gas and current at the premises in question. Upon the purchase of the store the plaintiff's son took charge of the business for her and continued the same, using the light as the Farleys had before the sale. After he had thus used the light for some time and about May 26, 1913, the said son of the plaintiff signed an application for light which was presented by the defendant company. There is no pretense that the plaintiff refused to pay for the current she consumed after she came into possession of the premises, and the service was interrupted solely because the plaintiff refused to pay for the current consumed and used by Farley, her vendor. There is nothing in the case to show that the plaintiff had notice of the promulgation of any rule or regulation by the defendant company to the effect that a consumer must make good the arrearages of his preceding tenant or tenants under penalty of a discontinuance of the service. Defendant's contention is, that since the plaintiff had notice of the Farley debt while the purchase money was still in her hands or under her control she was bound to pay the said bill and her refusal to do so justified a discontin-

uance of the service.  That she had notice of the debt
is a very different matter than having notice of some
rule or regulation which provides that the service will
be discontinued if the consumer refuse to pay the ar-
rearages of a previous tenant or tenants.   The mere
fact that she. had notice of the debt before the distribu-
tion of the purchase money gave the defendant no su-
perior right over other creditors - having claims against
the Farleys; each creditor had a right that there should be
a fair pro rata distribution of the moneys in hand, and
any preference shown to the defendant company would
.have been to the prejudice of the other creditors and an
invasion of their legal rights in the premises.   In Miller
v.  Wilkes-Barre Gas Company, 206 Pa. 254, in the
syllabus the law is laid down as follows: "A Gas Com-
pany chartered for the purpose of supplying with gas a
municipality and such individuals residing therein as
might desire gas, and having the right of eminent domain,
is bound to supply gas to any resident of the municipality,
and it cannot refuse such a supply to a tenant because
of a refusal of the latter to pay a former tenant's gas
bill, if it appears that the tenant before going into posses-
sion had no actual notice that he would be required
to pay such bill, and was not affected with constructive
notice by any resolution or by-law of the company to
that effect."   The controlling feature is the notice,
either actual or constructive, brought home to the ten-
ant.   It will be observed that in the above case the
court through Mr. Justice DEAN at page 257 say: "The
prior occupant of the same premises owed $15.75 and
defendant demanded that this amount be also paid or the
meter be taken out; plaintiff absolutely refused to pay
this amount.   That a municipality or corporation fur-
nishing water or gas may by ordinance or by-laws make
reasonable rules and regulations to insure the payment
of bills, among others, that of stopping the supply unless
all arrearages are paid, whether owing by the tenant in
possession or his predecessors, has been settled: Girard

Life Insurance Co. v. Philadelphia, 88 Pa. 393; Brumm's App., 22 W. N. C. 137. But there must be notice to, or knowledge of the incoming tenant of such rule. In case of a municipality the regulation must be by ordinance; of this all have actual or constructive notice. In case of a quasi public corporation such as this defendant, the regulation ought to be by resolution or by-law or at least by actual notice. The incoming tenant must somehow be able to find out before he enters upon possession his liability. If by merely entering into possession he assumes payment of another man's debts, he should have that knowledge or the means of it."

The weakness of the defendant's case and the unjustifiableness of its conduct in interrupting the service of the plaintiff is the want of notice of such a rule or regulation brought home to the plaintiff as above indicated before she entered into possession of the premises. The testimony does not disclose any such notice; Mr. Britton, the general manager of the company, testified that it was the custom of the light company to collect balances of prior occupants from those in possession of the premises but he had no knowledge of any formal action or rules promulgated by the corporation. This falls far short of coming within the doctrine laid down in the Girard Life Insurance and the Brumm cases above mentioned and there is no pretense that the plaintiff had notice of even this custom before going into possession of the premises. There is quite a distinction between notice of a prior tenant's arrearages and notice of a rule or regulation which provides for a discontinuance of service unless arrearages of former tenants are paid by the tenant in possession. We think the rule laid down in the Miller case is a salutary one and founded upon sound doctrine; that it should be adhered to and not extended; that it applies to the case under consideration and that the defendant had no legal right to sever the wires and discontinue the service under the circumstances. It would seem that Whiteman v. Fayette Fuel-Gas Com-

pany, 139 Pa. 492, is authority to warrant the awarding of the injunction. In view of the fact that the plaintiff made no legal tender of any amount to the defendant on account of the Farley claim, while the money was in her hands or under her control, the plaintiff is not entirely without blame. Other questions raised and discussed at the argument are disposed of in our answers to requests for finding of facts and legal conclusions.

And now, September 8, 1914, the preliminary injunction is hereby continued and made permanent, and the said defendant company, its agents, employees and servants are hereby restrained from disconnecting or cutting off or in any way interfering with the continuous and adequate supply of electric current and gas for light and power at plaintiff's place of business at the southeast corner of Independence and Rock streets in the borough of Shamokin so long as she complies with all the reasonable rules and regulations of the said company. The defendant is directed to pay all of the record costs; each party is hereby ordered to pay their own costs, if any be incurred, over and above the said record costs, and the plaintiff is further directed to pay to the defendant the amount legally due it from the purchase money paid into the hands of her attorney aforesaid within five days from the date thereof.

*Error assigned* was the decree of the court.

*Charles C. Lark,* for appellant.—When Mrs. Leisenring assumed to pay Mrs. Farley's creditors, among them, the defendant in this case, an implied contract arose between plaintiff and this defendant that she would pay it, at least $13.20, and upon her refusal to pay, defendant had a right to refuse to furnish her with further light: Brumm's App., 22 W. N. C. 137; Girard Life Ins. Co. v. Philadelphia, 88 Pa. 393; Wheeler v. Philadelphia, 77 Pa. 338; Western Saving Fund v. Philadelphia, 31 Pa. 175; Kohler v. Reitz, 46 Pa.

Superior Ct. 350; Avondale Marble Co. v. Wiggins, 12 Pa. Superior Ct. 577.

Some of the cardinal principles of equity are that "he who seeks equity must do equity," and that a "plaintiff must come into a court of equity with clean hands" and that "he who does inequity shall not have equity:" Reynolds v. Boland, 202 Pa. 642; Binkley v. Nolt, 46 Pa. Superior Ct. 531; Werkheiser v. Werkheiser, 3 Rawle, 326; Dwyer v. Wright, 162 Pa. 405; Evans v. Bravo, 24 Pa. 62; Brown v. Pitcairn, 148 Pa. 387.

*C. K. Morganroth,* for appellee, cited: Miller v. Wilkes-Barre Gas Co., 206 Pa. 254.

Opinion by Rice, P. J., February 24, 1915:

This case is so well stated in the opinion of the learned trial judge that a restatement of it by us would be superfluous.

One of the questions embraced in appellant's statement of questions involved is as to the jurisdiction of a court of equity, on an application for a preliminary injunction, to make a mandatory order restoring the status quo. As the appeal in the present case is from final decree made after hearing upon bill, answer and testimony, and as no other decree is specifically assigned for error, it seems that, if that decree is right, the question above stated is not now a vital one. We remark, however, that, while in some of the earlier cases will be found the expression that an interlocutory or preliminary injunction cannot be mandatory, yet later cases furnish instances where the power has been exercised. See Taylor v. Sauer, 40 Pa. Superior Ct. 229, and cases there cited; to which may be added Corbet v. Oil City Fuel Supply Co., 5 Pa. Superior Ct. 19. It is not to be exercised except in the clearest cases, and only so far as is necessary to restore the status quo, that is, the last actual peaceable and uncontested status which preceded the pending controversy. But that a

court of equity hás jurisdiction to make even a preliminary injunction mandatory is now well settled. The grounds upon which the jurisdiction rests, the special conditions that will justify a chancellor in exercising it, and the principles that should govern him are set forth by Justice MITCHELL in Fredericks v. Huber, 180 Pa. 572, and by our Brother HENDERSON in Taylor v. Sauer, 40 Pa. Superior Ct. 229, and Tussey v. Clark, 45 Pa. Superior Ct. 433, and need not be restated here.

With regard to the second question presented by appellant in the statement of questions involved, it seems sufficient to say that the claim of the defendant against the plaintiff's vendor and the purchase money fund was not superior to those of other creditors, and, therefore, plaintiff's refusal to pay defendant more than its pro rata share of the fund was not inequitable conduct which barred plaintiff from filing the bill.

The first question as set forth in the statement of questions involved is as to a light company's "right to cut supply of current to present occupant of building for refusal to pay prior tenant's arrearages." In passing on this question, as applied to the present case, the facts should be noticed, that no rule or regulation was adopted and promulgated by the board of directors of the defendant company imposing such obligation, and that the evidence does not show that the plaintiff had notice of the practice of the company in that regard. As thus qualified, the question is conclusively answered in the negative by the ruling in Miller v. Wilkes-Barre Gas Co., 206 Pa. 254, which is correctly stated in the syllabus as follows: A gas company chartered for the purpose of supplying with gas a municipality and such individuals residing therein as might desire gas, and having the right of eminent domain, is bound to supply gas to any resident of the municipality, and it cannot refuse such a supply to a tenant because of a refusal of the latter to pay a former tenant's gas bill, if it appears that the tenant before going into possession had no actual notice

that he would be required to pay such bill, and was not affected with constructive notice by any resolution or by-law of the company to that effect.   The learned trial judge has shown convincingly that the principle there decided is precisely applicable to the facts of this case, that the cutting of the current from the plaintiff's premises was wrongful, and that she was entitled to equitable relief.   We affirm his conclusions in these regards upon his clear and satisfactory opinion.   If there was any inconsistency in not requiring the defendant to pay all the costs, or in directing the plaintiff to pay to defendant a proportionate part of the purchase money, it inured to defendant's benefit, and, therefore, it cannot graciously or justly complain.

The assignments of error are overruled and the decree is affirmed: the costs of this appeal to be paid by appellant.