## Department of Environmental Resources *v.* Leechburg Mining Company.

Argued March 5, 1973, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert F. Shostak,* Special Assistant Attorney General, with him *Thomas M. Burke, Elissa A. Parker* and *Patrick G. McGinley,* for plaintiff.

*Harold R. Schmidt,* with him *Henry Ingram, Lawrence A. Demase, Philip C. Wolf, Rose, Schmidt and Dixon, Carroll F. Purdy, Jr., Metzger, Hafer, Keefer, Thomas and Wood,* and, of counsel, *Alexander J. Barron,* for defendant.

OPINION BY PRESIDENT JUDGE BOWMAN, May 22, 1973:

A multiplicity of administrative and judicial remedies afforded to the Department of Environmental Resources (DER) in enforcement of the numerous environmental statutes of the Commonwealth underlies the issues in this case. It is presently before us on defendant's preliminary objections to a complaint in equity.

On April 24, 1972, DER issued an order against Leechburg Mining Company requiring it to take certain steps to bring its coal mining operation in compliance with various provisions of The Clean Streams Law, the Coal Refuse Disposal Control Act and the Pennsylvania Solid Waste Management Act,[1] concerning the collection and treatment of runoff from a coal refuse disposal area and making operable its mine water treatment facility. Leechburg was also directed to apply to DER for a permit to operate such a disposal area and a treatment facility pursuant to applicable provisions of the statutes cited.

From this order Leechburg appealed to the Environmental Hearing Board.[2] On July 10, 1972, by agreement of the parties, the Board entered a Partial Consent Adjudication which expanded upon and modified certain provisions of the departmental order in question. In addition to agreeing to comply with the aforementioned acts with respect to the violations charged to it by the DER order, Leechburg also agreed to take certain steps to bring its operation in compliance with the Air Pollution Control Act.[3]

Specifically the Partial Consent Adjudication directs the defendant: (a) to place its treatment facilities into full operation so that effluent capable of treatment

---

[1] Respectively, the Act of June 22, 1937, P. L. 1987, as amended, 35 P.S. §691.1 et seq.; the Act of September 24, 1968, P. L. 1040, 52 P.S. §30.51 et seq.; the Act of July 31, 1968, P. L. 788, 35 P.S. §6001 et seq.

[2] Established by the Act of December 3, 1970, P. L. 834, 71 P.S. §510-1 et seq., amending The Administrative Code of 1929, Act of April 9, 1929, P. L. 177, 71 P.S. §51 et seq., and empowered to ". . . hold hearings and issue adjudications . . . on any order, permit, license, or decision of the Department of Environmental Resources." Section 1921-A(a) of the 1970 Act, 71 P.S. §510-21(a).

[3] Act of January 8, 1960, P. L. (1959) 2119, 35 P.S. §4001 et seq.

meets Department standards; (b) to construct ditches to divert surface water away from its refuse disposal area and collect runoff which could not be diverted; (c) to submit to the DER a preliminary report with regard to the collection and treatment of all discharges of industrial waste from its coal refuse disposal area and the prevention of air pollution from its coal refuse disposal area; (d) to submit a complete and formal application for a Bureau of Water Quality Management Permit for the operation, collection and treatment of those discharges from its coal refuse disposal area that it is required by law to treat; (e) to deposit all current coal refuse on the disposal area permitted under its Coal Refuse Disposal Permit and in compliance with the requirements of the Coal Refuse Disposal Act; and (f) to apply to the DER for a Solid Waste Management Act Permit on or before September 30, 1972, or advise the Board that it would not apply, at which time a hearing would be held before the Board on whether or not such a permit could be required. In each case, a time in which compliance is to be achieved is specified in the Partial Consent Adjudication.

No appeal has been taken from the Board's Partial Consent Adjudication, and no further proceedings have been sought or conducted by the Board under its Partial Consent Adjudication.

On December 6, 1972, DER filed a complaint in equity which originally contained five counts, one of which was later withdrawn. In Count I, plaintiff alleges Leechburg to be in violation of The Clean Streams Law and rules and regulations promulgated thereunder in permitting acid water from a coal refuse area and from roads and yards to enter the waters of the Commonwealth by percolation, surface and subsurface drainage; and in operating a mine drainage treatment facility without a permit. Count II alleges Leechburg

to be in violation of the Coal Refuse Disposal Act *in breaching the aforementioned consent adjudication* and the Air Pollution Control Act in the management and operation of its coal refuse area. Count III alleges Leechburg to be in violation of the Air Pollution Control Act and regulations promulgated thereunder, again with respect to its coal refuse area, and Count IV alleges violation of the Solid Waste Management Act and regulations promulgated thereunder with respect to the coal waste refuse area in operating the same without a permit.

To the complaint in equity Leechburg filed preliminary objections raising questions of jurisdiction in the nature of a demurrer and a motion for more specific pleading as to all counts.

Although it is not manifest in the record or in the briefs filed, Leechburg's counsel stated at oral argument that defendant has no objection on jurisdictional grounds to a judicial determination of whether or not defendant is in compliance with the consent adjudication entered by the Environmental Hearing Board. It urges, however, that the Board's consent adjudication is res judicata of each and every cause of action asserted by the Commonwealth in its complaint (excepting the averments of Count II alleging noncompliance with the Board's adjudication) based on the theory that administrative adjudications are to be accorded the same status as judicial decisions in applying the doctrine of res judicata.

The essence of the Commonwealth's countervailing argument is that the several statutes in question explicitly afford equity jurisdiction to the court which is concurrent with and cumulative to any other remedy or relief also afforded by these same statutes.

As suggested above, the Legislature has been generous in affording to DER multiple remedies in en-

forcement of our environmental statutes. While not uniform in language employed nor in the variety of forms of remedies afforded, civil penalties with imprisonment for nonpayment are usually provided with respect to noncompliance with DER orders; activities or conditions in violation of statutory provisions or of DER rules and regulations are declared to be nuisances or abatable, or both; and several statutes declare the prescribed statutory remedies to be cumulative and in addition to any others provided by general law, among which, of course, are the traditional administrative law procedures for issuance of administrative orders subject to administrative and judicial review.

In themselves, the Commonwealth argues, these statutory provisions afford to courts equity jurisdiction of the cause of action it here asserts. We agree with the Commonwealth that the existence of traditional administrative law procedures such as provided in these statutes and by the provisions of The Administrative Code of 1929, which are generally recognized as affording an adequate remedy at law, does not necessarily oust the equity jurisdiction of the court where, as here, such jurisdiction is conferred by explicit language of the statute or necessarily inferred by reason of the explicit relief afforded by the statute. The Supreme Court considered a similar question in *Brookhaven Borough v. American Rendering, Inc.,* 434 Pa. 290, 291-92, 256 A. 2d 626, 627 (1969), in which it said:

"In Commonwealth v. Glen Alden Corporation, 418 Pa. 57, 210 A. 2d 256 (1965), we required the statutory procedures of the Air Pollution Control Act of 1960, P. L. (1959) 2119, 35 P.S. §4001, to be strictly pursued and held that equity had no jurisdiction to inquire into a controversy where to do so would obviate a statutory procedure provided by the legislature for its resolution. The legislature then amended the Air Pollution Con-

trol Act of June 12, 1968, P. L.      , 35 P.S. §4012.1 by adding, after §12, a new section. . . .

"It is apparent that the legislature by amending the act extended the same cumulative remedies that presently exist to abate the pollution of the waters of this Commonwealth as contained in the Clean Streams Act of 1937, June 22, P. L. 1987, Art. I, §1 et seq., 35 P.S. 691.1 et seq. to the Air Pollution Control Act. It is now clear that equity jurisdiction attaches to restrain a public or private nuisance caused by air pollution and that the lower court correctly dismissed the preliminary objections to equity jurisdiction."

But this does not resolve the issue confronting us here, for we do not agree with the Commonwealth that given a choice of means to act it has the right to enforce alleged particular violations by multiple proceedings in such number and at such times it deems advisable or necessary.[4]

The doctrines of exhaustion of administrative remedies, of primary jurisdiction and of election of remedies, although distinct doctrines, have been frequently misused and confused in repeated efforts by the courts to define the role of the judiciary in the field of administrative law. Here we are not concerned with the doctrine of exhaustion of administrative remedies and its exceptions,[5] a truly jurisdictional issue, as the Legislature has clearly afforded to DER multiple choices of remedies to enforce the law, its regulations or orders. Nor are we directly concerned with the doctrine of pri-

---

[4] At oral argument the Commonwealth suggested the alleged violations of law asserted in its complaint in equity deal with new or different violations from those which were the subject of its order of April 24, 1972, and the ensuing administrative proceedings. The record before us simply cannot support such a contention.

[5] See *Beth Jacob Schools of Philadelphia v. Labor Relations Board*, 8 Pa. Commmonwealth Ct. 343, 301 A. 2d 715 (1973).

mary jurisdiction which is said to be one of determination whether the court or an administrative agency should make the initial determination, hence being a concept of judicial restraint and not really one of jurisdiction. 3 K. Davis, Administrative Law Treatise §19.01 (1958).

Our independent research has disclosed no Pennsylvania decisions as to the application of the doctrine of election of remedies within the context of multiple choices being afforded an administrative body to enforce the law, its rules and regulations or its orders in a court of law or through administrative procedures. 12 P.L.E. *Election of Remedies* §1 (1959) states that the doctrine does apply to administrative as well as to judicial remedies, citing *Terminal Warehouse Co. v. Pennsylvania Railroad Co.*, 297 U.S. 500 (1936). At law, one having a choice of remedies which are inconsistent, having elected to pursue one is thereby precluded from pursuing the other. *In re Polsgrove. Pott's Appeal*, 5 Pa. 500 (1847) ; *Harper v. Quinlan*, 159 Pa. Superior Ct. 367, 48 A. 2d 113 (1946) ; *Hendershot v. Hughes*, 52 Pa. D. & C. 2d 688 (1971) ; 1 Standard Pennsylvania Practice 524, §77.

In our opinion, this doctrine should be equally applicable to an administrative agency which, given a choice of means to act, chooses to act through the issuance of an administrative order. In such cases the administrative procedures prescribed for the administrative review and ultimate judicial review, if sought, should be declared exclusive and other means of enforcement (remedies) initially available to that administrative body should no longer be available to it. To hold otherwise would subject those against whom an administrative body acts to multiple litigation, such as here, possible harassment and potentially inconsistent results.

We, therefore, hold that a court of law in equity or otherwise, is without jurisdiction in the case before us for the reason that DER initially elected to enforce alleged violations both of law and of its own rules and regulations by Leechburg through issuance of an administrative order, excepting only that portion of DER's complaint asserting Leechburg's failure to abide by the referred to consent adjudication entered by the Environmental Hearing Board.

Having so concluded, we need not consider or decide Leechburg's contention that the consent adjudication is res judicata of the cause of action asserted by DER in its complaint in equity.

We conclude by observing that inasmuch as the statutory law creating the Environmental Hearing Board and defining its powers and duties makes no specific provision for enforcement of Board orders either by the Board or by the judiciary, a court of law must be available to entertain and act in proceedings to enforce a consent adjudication. Whether such proceedings are properly asserted in a court of equity or simply initiated by an enforcement proceeding filed on the law side of the court, we need not decide. As to this aspect of the complaint Leechburg does not question the jurisdiction of this Court.

Accordingly, we enter the following

#### Order

Now, May 22, 1973, the preliminary objections of defendant Leechburg Mining Company are sustained in part and denied in part. To the extent that this Court is without jurisdiction over the cause of action asserted by plaintiff in its complaint in equity as delineated above, defendant's preliminary objections are sustained. Defendant is hereby directed to answer plaintiff's complaint to the extent that it avers defendant to be in vio-

lation of the consent adjudication within twenty (20) days of the date hereof by making answer as to its compliance or noncompliance with each paragraph of the aforesaid consent adjudication.