414 A.2d 91

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Delmar COWARD and Coward Contracting Company, Inc., Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1979.

Decided April 30, 1980.

Richard H. Galloway, Ackerman & Galloway, Greensburg, for appellants.

Howard J. Wein, Asst. Atty. Gen., Dept. of Environmental Resources, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

This is an appeal from a preliminary injunction granted by the Commonwealth Court at the behest of the Department of Environmental Resources of the Commonwealth of Pennsylvania (DER), enjoining appellants, Delmar Coward and the Coward Contracting Company from operating a landfill in Westmoreland County, and requiring appellants to remedy the pollution discharged from that landfill. For the reasons below, we affirm the decree of the Commonwealth Court.

For our purposes, this case began on August 16, 1976, when the DER issued the first of two administrative orders directing appellants to submit within 45 days an updated and revised solid waste application and design plan concerning the Westmoreland County landfill, and to submit an application for a revised and modified Industrial Waste

permit in order to comply with the Clean Streams Law [1] and the Industrial Waste permit already issued to Delmar Coward. This order was issued pursuant to the Clean Streams Law, the Solid Waste Management Act,[2] and § 1917–A of

1. Act of June 22, 1937, P.L. 1987; *as amended* 35 P.S. §§ 691.1 *et seq.* (1977). Specifically, the DER acted under the 1970 amendments to the Clean Streams Law, Act of July 31, 1970, P.L. 653, No. 222, § 17, 35 P.S. § 691.610, which provides:

§ 691.610. Enforcement orders

The department may issue such orders as are necessary to aid in the enforcement of the provisions of this act. Such orders shall include, but shall not be limited to, orders modifying, suspending or revoking permits and orders requiring persons or municipalities to cease operations of an establishment which, in the course of its operation, has a discharge which is in violation of any provision of this act. Such an order may be issued if the department finds that a condition existing in or on the operation involved is causing or is creating a danger of pollution of the waters of the Commonwealth, or if it finds that the permittee, or any person or municipality is in violation of any relevant provision of this act, or of any relevant rule, regulation or order of the board or relevant order of the department: Provided, however, That an order affecting an operation not directly related to the condition or violation in question, may be issued only if the department finds that the other enforcement procedures, penalties and remedies available under this act would probably not be adequate to effect prompt or effective correction of the condition or violation. The department may, in its order, require compliance with such conditions as are necessary to prevent or abate pollution or effect the purposes of this act. An order issued under this section shall take effect upon notice, unless the order specifies otherwise. An appeal to the board of the department's order shall not act as a supersedeas: Provided, however, That, upon application and for cause shown, the board or the Commonwealth Court may issue such a supersedeas. The right of the department to issue an order under this section is in addition to any penalty which may be imposed pursuant to this act. The failure to comply with any such order is hereby declared to be a nuisance.

2. Act of July 31, 1968, P.L. 788, No. 241, §§ 1 *et seq.*, 35 P.S. §§ 6001 *et seq.* (1977). Specifically, section 6 of the Act, *as amended* at 35 P.S. § 6006, provides:

§ 6006. Powers and duties of the department

The department shall have the power and its duty shall be to:

(1) Administer the solid waste management program pursuant to the provisions of this act.

(2) Cooperate with appropriate Federal, State, interstate and local units of government and with appropriate private organizations in carrying out its duties under this act.

(3) Adopt such rules, regulations, standards and procedures as shall be necessary to conserve the air, water and land resources of

the Administrative Code.[3] It was made necessary by the continual generation of leachate from the landfill and its

the Commonwealth, protect the public health, prevent public nuisances, and enable it to carry out the purposes and provisions of this act.

(4) Develop a Statewide solid waste management plan in cooperation with local governments, the Department of Community Affairs and the State Planning Board. When feasible, emphasis shall be given to area wide planning.

(5) Provide technical assistance to municipalities, counties and authorities including the training of personnel.

(6) Report to the legislature from time to time on further assistance that will be needed to administer the solid waste management program.

(7) Initiate, conduct and support research, demonstration projects, and investigations and coordinate all State agency research programs pertaining to solid waste management systems.

(8) Establish policies for effective solid waste management systems.

(9) Issue such permits and orders and conduct such inspections as may be necessary to implement the provisions of this act and the rules, regulations and standards adopted pursuant to the act.

(10) Develop methods to identify the source of any solid waste which is part of the process of a solid waste management system to prevent any solid waste collected from another state that does not accept solid waste from this Commonwealth from being processed as part of such solid waste management system.

3. Act of December 3, 1970, P.L. 834, No. 275, § 20, at P.L. 845 *et seq.*, 71 P.S. §§ 510–1 *et seq.* (Supp.1979–80). Section 1917–A, 71 P.S. § 510–17 provides:

§ 510–17. (Adm.Code § 1917–A). Abatement of nuisances

The Department of Environmental Resources shall have the power and its duty shall be:

(1) To protect the people of this Commonwealth from unsanitary conditions and other nuisances, including any condition which is declared to be a nuisance by any law administered by the department;

(2) To cause examination to be made of nuisances, or questions affecting the security of life and health, in any locality, and, for that purpose, without fee or hindrance, to enter, examine and survey all grounds, vehicles, apartments, buildings, and places, within the Commonwealth, and all persons, authorized by the department to enter, examine and survey such grounds, vehicles, apartments, buildings and places, shall have the powers and authority conferred by law upon constables;

(3) To order such nuisances including those detrimental to the public health to be abated and removed;

(4) If the owner or occupant of any premises, whereon any such nuisance fails to comply with any order of the department for the abatement or removal thereof, to enter upon the premises, to which such order relates, and abate or remove such nuisance;

discharge into a tributary with the Clean Streams Law and its attendant rules and regulations. Appellant failed to appeal this order and failed to comply with its directives. Consequently the DER issued a second order, dated March 24, 1977, directing the closure of the landfill. The DER is given authority to issue orders to abate such nuisances by § 1917–A of the Administrative Code. Orders issued by the DER do not become final until the party adversely affected has been given the opportunity to appeal to the Environmental Hearing Board (EHB). Administrative Code § 1921–A.[4] While the August 16, 1976 order was never appealed

(5) For the purpose of collecting or recovering the expense of the abatement or removal of a nuisance, to file a claim, or maintain an action, in such manner as may now or hereafter be provided by law, against the owner or occupant of the premises upon or from which such nuisance shall have been abated or removed by the department;

(6) In making examinations as authorized by this section, the Department of Environmental Resources shall cooperate with the Department of Health, for the purpose of avoiding any duplication of inspection or overlapping of functions.

4. *Id.*, at § 1921–A, 71 P.S. § 510–21, which provides:

§ 510–21. (Adm.Code § 1921–A). Environmental Hearing Board

(a) The Environmental Hearing Board shall have the power and its duties shall be to hold hearings and issue adjudications under the provisions of the act of June 4, 1945 (P.L. 1388), known as the "Administrative Agency Law," on any order, permit, license or decision of the Department of Environmental Resources.

(b) The Environmental Hearing Board shall continue to exercise any power to hold hearings and issue adjudications heretofore vested in the several persons, departments, boards and commissions set forth in section 1901–A of this act.

(c) Anything in any law to the contrary notwithstanding, any action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the department adversely affecting any person shall be final as to such person until such person has had the opportunity to appeal such action to the Environmental Hearing Board; provided, however, that any such action shall be final as to any person who has not perfected his appeal in the manner hereinafter specified.

(d) An appeal taken to the Environmental Hearing Board from a decision of the Department of Environmental Resources shall not act as a supersedeas, but, upon cause shown and where the circumstances require it, the department and/or the board shall have the power to grant a supersedeas.

and thus became final, the 1977 order was appealed to the EHB which affirmed the order. Without enforcement power of its own, the DER then filed an equity action invoking the original jurisdiction of the Commonwealth Court[5] requesting an injunction to abate the nuisance. Appellants filed an independent appeal of the EHB determination to the Commonwealth Court per 42 Pa.C.S.A. § 763,[6] subsequent to the filing of the equity action by the DER. The Commonwealth Court chose to dispose of the original equity action first, and granted the relief sought by the DER. (filed September 22, 1978). Although the Commonwealth

(e) Hearings of the Environmental Hearing Board shall be conducted in accordance with rules and regulations adopted by the Environmental Quality Board and such rules and regulations shall include time limits for the taking of appeals, procedures for the taking of appeals, locations at which hearings shall be held and such other rules and regulations as may be determined advisable by the Environmental Quality Board.

(f) The board may employ, with the concurrence of the Secretary of Environmental Resources, hearing examiners and such other personnel as are necessary in the exercise of its functions.

(g) The board shall have the power to subpoena witnesses, records and papers and upon certification to it of failure to obey any such subpoena, the Commonwealth Court is empowered after hearing to enter, when proper, an adjudication of contempt and such other order as the circumstances require.

5. 42 Pa.C.S.A. § 761 (1979 pamphlet) provides in part:
§ 761. Original jurisdiction
(a) General rule.—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
\* \* \* \* \* \*
(2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings.

6. This section provides in part:
§ 763. Direct appeals from government agencies
(a) General rule.—Except as provided in subsection (c), the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of government agencies in the following cases:
(1) All appeals from Commonwealth agencies under Subchapter A of Chapter 7 of Title 2 (relating to judicial review of Commonwealth agency action) or otherwise and including appeals from the Environmental Hearing Board, the Pennsylvania Public Utility Commission, the Unemployment Compensation Board of Review and from any other Commonwealth agency having Statewide jurisdiction.

Court later affirmed the order of the EHB closing the landfill, 46 Pa.Cmwlth. 416, 406 A.2d 587 (1979), the cause currently before our Court is the appeal of the preliminary injunction issued by the Commonwealth Court.[7]

The first issue raised by appellant is an attack upon the jurisdiction of the Commonwealth Court to entertain and decide the original equity action when the EHB appeal also was before that court. Appellants contend that the filing of an appeal with the Commonwealth Court from an adjudication by the EHB precludes the Commonwealth Court from exercising its original jurisdiction in an equity

---

7. This injunction provided the following:

PRELIMINARY INJUNCTION

NOW, this 22nd day of September, 1978, in consideration of Plaintiff's Motion for Preliminary Injunction, and after hearing thereon, it appearing to the Court that Plaintiff is entitled to said injunction, it is ordered that until final hearing on the merits:

1. The Defendants, their agents, servants, employees, successors, and assigns are hereby enjoined from operating the landfill or permitting solid waste from being deposited on the landfill.

2. The Defendants shall forthwith limit the access to the site by placement of chain or gate across the access road, and implement a vector control plan, including but not limited to rodent baiting and prevention of fly infestation.

3. The Defendants shall within sixty (60) days place a final layer of soil compacted to a uniform depth of one (1) foot over the entire surface of the fill area.

4. Within forty-five (45) days, the Defendants shall submit an application to amend its existing water quality management permit to provide adequate treatment of the leachate generated from the landfill so that it meets the requirements of the Clean Streams Law, Act of June 22, 1937, P.L.1987, as amended, 35 P.S. § 691.1 et seq., and the Rules and Regulations promulgated thereunder.

5. Upon approval by the Commonwealth, Department of Environmental Resources, of said application, the Defendants shall implement those changes in the treatment facilities so as to comply with the Clean Streams Law and the Rules and Regulations promulgated thereunder.

6. Within forty-five (45) days, Defendants shall submit a plan to the Commonwealth, Department of Environmental Resources, for the collection of all uncollected leachate and conveyance of said leachate to the treatment facility.

7. Upon approval by the Commonwealth, Department of Environmental Resources, of said plan, Defendants shall implement said plan to convey the leachate to the treatment facilities for proper treatment prior to discharge into waters of the Commonwealth.

action between the same parties arising out of the same incident. We disagree.

A court's discretion in handling its own docket has long been recognized. *See In Re Road in McCandless Township*, 110 Pa. 605, 612, 1 A. 594 (1885). The policy of bringing "each pending matter to a final conclusion as promptly as possible" as is evidenced by Pa.R.J.A. No. 1901(a), further suggests that the Commonwealth Court could properly decide to hear the equity matter first. In fact, since it was docketed first, that policy may require such a disposition. There appear only two possible ways for the Commonwealth Court's jurisdiction to have been postponed: (1) if a petition for a stay of the equity action pending the appeal of the EHB adjudication had been filed by the appellant; or (2) if the filing of the appeal is deemed an automatic stay of the equity action.

A review of the record reveals no application for a stay by appellant. Further, the filing of the appeal to the Commonwealth Court cannot be seen as an automatic supersedeas. *Commonwealth v. Bethlehem Steel Corp.*, 469 Pa. 578, 367 A.2d 222 (1976). There the Court rejected the contention that the Commonwealth Court lacked original jurisdiction to entertain a DER action because an appeal or modification proceedings of the consent order involved was pending before the EHB:

Bethlehem may ultimately prevail in its efforts to have the order modified, and thus could be subject to unnecessary expense if the present order is enforced. This possibility, however, would not justify the conclusion that the courts are without jurisdiction to enforce the order. Such a conclusion would leave the courts powerless to enforce the order—even where it is highly unlikely that the order will be modified and where continued pollution in violation of the order presents a serious danger to the public. In effect, the mere application for an extension would operate as a stay; an applicant could continue to pollute for the period required to appeal to the EHB and the

courts. Such a result would be totally at odds with the strong legislative policy expressed in both the Air Pollution Control Act and the Clean Air Act. The modification proceedings must be carried out on the polluter's time, not at the expense of the general public.

*Id.*, 469 Pa. at 591–592, 367 A.2d at 228–229.

The Court also wrote:

Similarly, we believe that DER orders must remain enforceable during the pendency of modification proceedings in order to comply with the spirit of the Clean Air Act Amendments of 1970. We should not adopt a system by which litigation could be used as a tool to delay enforcement of air quality standards.

*Id.*, 469 Pa. at 591 n.22, 367 A.2d at 228 n.22.

While the interpretation goes to a different statute, the analysis is easily applicable to the Clean Streams Law and the Solid Waste Management Act, as the legislative objective is the same: to protect the public from the continuance of harmful pollutants, be it air or water.

Turning to the language of § 1921–A of the Administrative Code, 71 P.S. § 510–21(d) which expressly states that an appeal to the EHB of an DER order will not act as an automatic supersedeas,[8] and adopting the rationale of the Court in *Bethlehem Steel*, it is clear that where a policy exists in favor of enforceability of DER orders when they are not yet final, "an even stronger policy in favor of enforceability applies once an order becomes final." *Commonwealth v. Bethlehem Steel Corp.*, 469 Pa. at 588 n.13, 367 A.2d at 227 n.13. As previously noted, a DER order becomes final once the *opportunity* to appeal to the EHB has been given to the party adversely affected by the order. We now hold that the pendency of a statutorily permitted appeal does not preclude the Commonwealth Court from enforcing final orders of the DER through the court's exercise of its equity jurisdiction.

**8.** *See* note 4, *supra*, for text of this section.

■ Appellants next claim that the doctrine of election of remedies precluded the DER from filing an independent equity action to enforce its prior orders. Appellants' misunderstanding of this doctrine has led them into fundamental error, because the DER has never chosen inconsistent remedial paths. The DER has the express authority to issue orders abating or preventing pollution. Clean Streams Law, § 610, *as amended*, 35 P.S. § 691.610. "The failure to comply with any such order is hereby declared to be a nuisance." *Id.* This same act authorizes the DER to file suit in equity on behalf of the Commonwealth and to seek an injunction to abate such nuisances. *Id.* at § 601, *as amended*, 35 P.S. § 691.601.[9] In the present case, the orders of the DER became final after the EHB affirmance. Accordingly, the DER had the right if not the pressing duty, to immediately seek enforcement of its order abating harmful pollution by appellants. This position is supported by the clear words of the act itself which allows the action taken by the DER:

> The collection of any penalty under the provisions of this act shall not be construed as estopping the Commonwealth, or any district attorney or solicitor of a municipality, from proceeding in courts of law or equity to abate pollutions forbidden under this act, or abate nuisances

9. This section provides:

> § 691.601 Abatement of nuisances; restraining violations
> (a) Any activity or condition declared by this act to be a nuisance, shall be abatable in the manner provided by law or equity for the abatement of public nuisances. In addition, suits to abate such nuisances or suits to restrain or prevent any violation of this act may be instituted in equity or at law in the name of the Commonwealth upon relation of the Attorney General, or upon relation of any district attorney of any county, or upon relation of the solicitor of any municipality affected, after notice has first been served upon the Attorney General of the intention of the district attorney or solicitor to so proceed. No action shall be brought by such district attorney or solicitor against any municipality discharging sewage under a permit of the board heretofore issued or hereafter issued under this act: And provided further, That, except in cases of emergency where, in the opinion of the court, the exigencies of the cases require immediate abatement of said nuisances, the court may, in its decree, fix a reasonable time during which the person or municipality responsible for the nuisances may make provision for the abatement of the same.

under existing law. *It is hereby declared to be the purpose of this act to provide additional and cumulative remedies to abate the pollution of the waters of this Commonwealth,* and nothing in this act contained shall in any way abridge or alter rights of action or remedies now or hereafter existing in equity, or under the common law or statutory law, criminal or civil, nor shall any provision in this act, or the granting of any permit under this act, or any act done by virtue of this act, be construed as estopping the Commonwealth, persons or municipalities, in the exercise of their rights under the common law or decisional law or in equity, from proceeding in courts of law or equity to suppress nuisances, or to abate any pollution now or hereafter existing, or enforce common law or statutory rights.

Clean Streams Law § 701, 35 P.S. § 691.701 (emphasis added).

Appellants rely primarily upon *DER v. Leechburg Mining Co.,* 9 Pa.Cmwlth. 297, 305 A.2d 764 (1973), as support for their theory that the DER is barred by the doctrine of election of remedies from instituting the present complaint. *Leechburg* has been limited by a more recent Commonwealth Court decision, however. In *DER v. Pa. Power Co.,* 34 Pa.Cmwlth. 546, 384 A.2d 273 (1978), the DER had filed a contempt action in the court of common pleas calling for incarceration and fines, and had also filed a civil penalty action before the EHB[10] in order to force compliance with two court orders requiring Pa. Power to meet pollution emission standards. On appeal of the order imposing civil penalties, the Commonwealth Court found that the action for contempt did not bar the action for civil penalties before the EHB. In distinguishing this case from *Leechburg* the court wrote:

The case relied upon by PPC, *Department of Environmental Resources v. Leechburg Mining Co.,* 9 Pa.Cmwlth.

10. Act of January 8, 1960, P.L. 2119, § 9.1, as amended, 35 P.S. § 4009.1.

297, 305 A.2d 764 (1973), is inapposite. In that case, an administrative order was issued which required Leechburg Mining to take certain steps so that compliance with several pollution control acts could be obtained. The parties entered into a subsequent partial consent adjudication on that order from which no appeal was taken. Thereafter, a new action in equity was brought by DER to obtain abatement of the identical alleged violations for which the parties entered into the consent adjudication. In such an instance, it is entirely possible that inconsistent remedies may result. Where as here, however, the remedies actually obtained are supportive but not inconsistent or duplicative, it is inappropriate to invoke the doctrine of election of remedies. *Nuside Metal Products, Inc. v. Eazor Express, Inc.,* 189 Pa.Super. 593, 152 A.2d 275 (1959). *DER v. Pa. Power Co.,* 34 Pa.Cmwlth. at 562, 384 A.2d at 281.

In *DER v. Fleetwood Borough Authority,* 21 Pa.Cmwlth. 349, 352–353, 346 A.2d 867, 869 (1975), the court affirmed a common pleas court conviction and fine imposed upon the respective borough authority for violations of the Clean Streams Act:

> Moreover, we have no difficulty in accepting the conclusion that both the criminal penalties as well as the abatement remedies may be applied against a violator of the Clean Streams Law. Section 701, 35 P.S. § 691.701, clearly declares it the purpose of the act to provide additional and cumulative remedies to abate the pollution of the waters of this Commonwealth.

In the present case, two of the three counts of the DER complaint filed with the Commonwealth Court consisted of an attempt by the DER to enforce its earlier orders. The third count requests additional equitable relief requiring appellants to clean up or collect all of the pollution discharged from their landfill, and is not included within either of the two administrative orders. This count is "supportive"

and "not inconsistent or duplicative" of the administrative orders. Hence its assertion is not barred by the doctrine of election of remedies. *DER v. Pa. Power Co., supra.* Furthermore, an application of the doctrine in the present case would be absurd: it would allow relief to be granted as to the first two counts closing the landfill, but the pollutant already discharged would be permitted to destroy the land and waterways. Such an approach is unduly harsh and ignores the essential remedial nature of the relief sought in each count.

Appellant argues that the Commonwealth Court abused its discretion in issuing the mandatory preliminary injunction at issue. The standard of appellate review of the grant of a preliminary injunction was recently set forth by this Court in *New Castle Orthopedic Assoc. v. Burns*, 481 Pa. 460, 463–64, 392 A.2d 1383, 1385 (1978):

> The scope of our review on an appeal from a decree either granting or denying a preliminary injunction is to examine the record only to determine if there were any *apparently reasonable grounds* for the action of the court below . . . . *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 343–44, 123 A.2d 626, 627 (1956). (Emphasis supplied). *Summit Township v. Fennell*, 392 Pa. 313, 140 A.2d 789 (1958). *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 215, 189 A.2d 180, 181 (1963). And the essential prerequisites for the issuance of a preliminary injunction are: first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp., supra.* Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to

abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded; *Keystone Guild, Inc. v. Pappas,* 399 Pa. 46, 159 A.2d 681 (1960), and *Herman v. Dixon,* 393 Pa. 33, 141 A.2d 576 (1958).

 The finding of irreparable harm usually is made by the court. Where a statute proscribes certain activity, all that need be done is for the court to make a finding that the illegal activity occurred. In *Pa. P. U. C. v. Israel,* 356 Pa. 400, 406, 52 A.2d 317, 321 (1947), where a preliminary injunction was issued restraining a transportation company from operating taxicabs for compensation without the required certificates, this Court wrote:

> At the hearing the Commonwealth has made a prima facie showing that the defendants are operating taxicabs in violation of law. The argument that a violation of law can be a benefit to the public is without merit. When the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. For one to continue such unlawful conduct constitutes irreparable injury.

The appellee, DER, issued two orders to which an appeal was taken to the EHB. The EHB affirmance of those orders made the orders final and yet as testimony presented at the preliminary injunction hearing showed, the appellant failed to comply with the orders. "The failure to comply with any such order is hereby declared to be a nuisance." 35 P.S. § 691.610 (Supp.1979–1980). Thus irreparable harm was shown in accordance with the rules enunciated in *Israel.*

Appellant argues that the public will suffer a greater harm from the closure of the landfill than if it was to remain in operation. It is difficult to see how the public will suffer by the closure of landfill which continuously pollutes the land and waters which it adjoins. Certainly other methods of waste disposal, less harmful to the public exist. No merit can be found in appellant's assertion.

■ Finally, appellant contends that the preliminary injunction does not maintain the "status quo" as required, but rather orders closure and other affirmative actions and as such is improper.

In *Pa. P. U. C. v. Israel*, the same argument was made in an attempt to refute the order which stopped operation of the taxicabs.

The defendants further argue that the purpose of granting a preliminary injunction is to maintain the status quo and that since the defendants were operating before the bill was filed they should be allowed to continue to do so at least until final determination of the matter before us.

\* \* \* \* \* \*

It is true that in general the object of a preliminary injunction is to maintain things as they are until the rights of the parties can be considered and determined after a full hearing, but it is now well settled that at times it is necessary to make even a preliminary injunction mandatory: *Leisenring v. Pennsylvania Lighting Co.*, 59 Pa.Super. 202, 208 (1915).

In *Commonwealth v. Cohen*, 150 Pa.Super. 487, 489 [28 A.2d 723] (1942) the Court said: "The rule is 'that the status quo which will be preserved by preliminary injunction is the last actual, peaceable (and, we may add, lawful) noncontested status which preceded the pending controversy.'"

*Id.*, 356 Pa. at 407, 52 A.2d at 321. *See also Roberts v. School District of Scranton*, 462 Pa. 464, 469, 341 A.2d 475 (1975).

The issuance of a preliminary injunction which is mandatory in nature, although more sparingly granted, may be ordered where the rights of the plaintiff are clear or "the defendant must change the status of the parties while the result is pending." *McMullan v. Wohlgemuth*, 444 Pa. 563, 573, 281 A.2d 836, 841 (1971). *See also Township of South Fayette v. Commonwealth*, 477 Pa. 574, 580, 385 A.2d 344, 347 (1978).

The operation of the landfill produced and allowed pollutants to be discharged onto the land and into the waters of the Commonwealth in clear violation of the law. The continued operation of the landfill will allow such pollution to continue and as such the DER "must change the status of the parties while the result is pending" in order to safeguard the public interest. Accordingly, the mandatory preliminary injunction was warranted by the facts and circumstances of the present case.

■ Appellant's final contention is that the DER has engaged in multiple prosecutions of appellants to harass and punish appellants. In appellant's view, the DER comes to equity with unclean hands and should be denied the equitable relief it seeks. See *Shapiro v. Shapiro*, 415 Pa. 503, 204 A.2d 266 (1964). Appellant has waived this issue, however, by failing to raise it in their answer to the DER's equity complaint. In *Luitweiller v. Northchester Corp.*, 456 Pa. 530, 533, 319 A.2d 899, 901–902 (1974) the proper way to raise the claim of unclean hands was discussed by this Court:

> We note preliminarily that the objection that plaintiffs are guilty of unclean hands is not a proper matter for preliminary objections. . . . This is an affirmative defense, *Shapiro v. Shapiro*, 415 Pa. 503, 505, 204 A.2d 266 (1964), and should be raised as new matter under Pa.R. C.P. No. 1030.

Pa.R.C.P. 1032 states that defenses not raised in the proper manner are waived. Accordingly, we will not reach this final issue.

The decree of the Commonwealth Court issuing a preliminary injunction is affirmed. Each party to pay own costs.

MANDERINO, J., did not participate in the decision of this case.