444 So.2d 439 (1983)
W.H. MARTIN and C.H. Martin, Appellants,
v.
PINELLAS COUNTY, a Political Subdivision of the State of Florida, and H. George Wilde and Marjorie E. Wilde, Appellees.
Nos. 83-1466, 83-1912.
District Court of Appeal of Florida, Second District.
December 14, 1983.
Rehearing Denied January 30, 1984.
*440 Martin L. Garcia and Chris W. Altenbernd of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellants.
John T. Allen, Jr. and Michael J. Keane of John T. Allen, Jr., P.A., St. Petersburg, for appellee Pinellas County.
RYDER, Judge.
Water, water every where,
And all the boards did shrink;
Water, water every where,
Nor any drop to drink.[1]
Today, we obliquely address an evergrowing problem to which a young Samuel Coleridge made but brief reference almost two hundred years ago. That problem is the availability for mankind today and tomorrow of a sufficient amount of life-maintaining drinkable water. That problem is more acute in peninsular Florida, surrounded by insidiously encroaching salt water and other insults to its delicate aquifer. Actions which threaten the continued supply of this most basic element must receive the immediate attention of all. Our attention has been raised, and thus we write.
W.H. Martin and C.H. Martin appeal from the trial court's entry of a preliminary mandatory injunction, and the trial court's denial of the Martins' motion to dissolve that injunction. We affirm.
The Martins own approximately eighteen acres of land in Hillsborough County. On that land, they operated a borrow pit and landfill from 1978 until 1982. Originally, the landfill did not have a permit for operation from the Hillsborough Environmental Protection Commission (HEPC). A permit was eventually obtained to place construction demolition debris in the landfill. A permit for excavation and filling with construction demolition debris was also issued for the borrow pit.
Pinellas County operates the Eldrige-Wilde wellfield which is located on and in Pinellas County land. This wellfield supplies drinking water to the populace of Pinellas and Pasco Counties. The Martins' landfill and borrow pit is situated three quarters of a mile from the periphery of the wellfield.
In November 1982, Pinellas County filed suit against the Martins and others seeking injunctive relief and damages. The complaint, as amended, alleged that the Martins had buried illegal material in the pit area. The fill material was described as "noxious and deleterious material ... dangerous to the environment and in particular to maintaining a clear and potable water supply... ." Pinellas demanded removal of the material and damages as well as other relief.
In June 1983, an emergency motion for a mandatory injunction was filed by Pinellas County. The motion, based on testing of the property conducted by the County, sought an order requiring the Martins to immediately remove and dispose of the materials. It was alleged that testing revealed high levels of substances dangerous to the Pinellas County water supply, the environment, and surrounding public wells.
In response, the Martins filed several motions with the trial court, including a motion for continuance. Upon denial of the motions, the Martins filed petitions for writs of prohibition, mandamus and certiorari with this court. We denied all of the petitions and allowed the trial court to proceed with the hearing on the emergency motion.
The hearing was held on June 15, 1983. The evidence presented dealt with: the geological makeup of the relevant surface and subsurface areas; the type of landfill materials permitted; the type of materials actually *441 buried; the pertinent environmental regulations; the testing procedures utilized; the validity of the test results; the contaminants discovered; the actual, probable and potential effect of the pollution on the wellfield; the effect of ingestion of the chemical contaminants on human beings; the potential dilution of the chemicals as they traveled towards the wellfield; and the cost of excavation and disposal of the landfill material.
The trial court found that "dangerous substances, contaminants and pollutants" exist on the Martins' property. The court found that the substances are harmful and exist as a result of illegal dumping activities on the property, which the owners either participated in or knew about, thus making the owners responsible for the presence of the substances. The substances were described by the trial judge as "an unbelievable collection of material of the most odious nature... ." The trial judge added:
The defendants would have us assume a posture of chance, hope and optimism with regard to the substances, their danger, their migration. The plaintiffs, on the other hand, are espousing a course of safety and ecological conservatism, which is the course we must follow.
The best evidence presented today would indicate that these substances have already begun their infusion into the ambient earth around their dumping location, and from there into the surficial aquifer and Floridan aquifer. The possible, indeed the probable effects of these substances, should they continue to infuse into the aquifer, are totally unacceptable.
We are, after all, dealing with the single most necessary substance for the continuation of life, and that substance is water. Any danger to that primary necessity is ecologically and humanly unacceptable.
The only acceptable solution that this Court sees to what I find as a clear, present and imminent danger, and the danger with which we are presently confronted, is the immediate excavation, removal and safe disposal of these substances.
The trial court granted the emergency motion for a mandatory injunction, directing appellants to remove all buried fill in their landfill and borrow pit. Appellants were directed to dispose of the fill in a legally and ecologically acceptable manner with all due and deliberate speed. No additional dumping into the area would be allowed without leave of the court.
Several factors must be found before a court may issue a temporary mandatory injunction. Generally, such an injunction is proper where irreparable harm will result unless the status quo is maintained; a party has a clear legal right to the injunction; that party has no adequate remedy at law; and in certain cases, considerations of public interest. United States v. Midwest Solvent Recovery, Inc., 484 F. Supp. 138 (N.D.Ind. 1980); Wilson v. Sandstrom, 317 So.2d 732 (Fla. 1975), cert. denied, 423 U.S. 1053, 96 S.Ct. 782, 46 L.Ed.2d 642 (1976); Florida Land Co. v. Orange County, 418 So.2d 370 (Fla. 5th DCA 1982).
We find no need to review in great detail the evidence presented. Various rules of the Department of Environmental Regulation and the HEPC have been violated by appellants. Pinellas County has shown that as a result of these violations, there exists a real and substantial danger to the continued vitality of the Eldrige-Wilde wellfield. In fact, the record is replete with expert testimony and other evidence which substantiates the findings of the court below, and supports the trial court's entry of a temporary mandatory injunction. See United States v. Vertac Chemical Corp., 489 F. Supp. 870 (E.D.Ark. 1980). The elements necessary for issuance of the injunction have been shown by the appellee County. See United States v. Midwest Solvent Recovery, Inc., supra. Although the appellants have presented evidence in support of their position, it is for the finder of fact to resolve conflicts and draw factual conclusions. We shall not disturb the findings below. See Largo *442 Hospital Owners, Ltd. v. International Glass and Manufacturing Co., Inc., 410 So.2d 518 (Fla. 2d DCA 1982); Oceanic International Corp. v. Lantana Boatyard, 402 So.2d 507 (Fla. 4th DCA 1981); Consolidated Mutual Insurance Co. v. Hampton Shops, Inc., 332 So.2d 101 (Fla.3d DCA 1976).
The issuance of the temporary mandatory injunction is affirmed. To do otherwise would leave the trial court and other courts of this state powerless to protect the public and the environment from the apparent harm which results from the illegal burying of deleterious materials. See Commonwealth of Pennsylvania v. Coward, 489 Pa. 327, 414 A.2d 91 (1980).
During the pendancy of this appeal concerning entry of the preliminary mandatory injunction, appellants filed with the trial court a motion to dissolve the preliminary injunction. That motion was filed pursuant to Florida Rule of Civil Procedure 1.610(e), which provides:
(e) Motion to Dissolve. A party against whom a restraining order or an injunction has been granted may move to dissolve it at any time.
Appellants claimed that new evidence had been discovered which showed that the landfill did not pose an imminent danger to the wellfield. The trial court declined to consider the motion to dissolve, stating that the parties had adequate time for testing and preparation prior to entry of the preliminary mandatory injunction. The court expressed its belief that with additional time, the appellees would likely have available additional study and testing results to support their position. The trial court indicated that pending this court's decision on the propriety of the issuance of the preliminary injunction, it would not reconsider the issue.
Under the circumstances of this case, we agree with the trial court's decision on the motion to dissolve. We note and emphasize, however, that the appellants have the right to a final hearing before the trial court on the merits of this cause. At that time, both parties shall have the opportunity to present any additional evidence which will enable the trial court to determine the necessity for a permanent injunction and otherwise fashion a final judgment.
AFFIRMED.
HOBSON, A.C.J., and CAMPBELL, J., concur.
NOTES
[1] S.T. Coleridge, The Rime of the Ancient Mariner, pt. II (1798).